**WAH-TSA-E-O-SHE et al. v. WEBSTER.**

No. 8801—Opinion Filed April 9, 1918.

(172 Pac. 78.)

### 1. States—Indians—Tribal Customs.

Since statehood, an attempted divorce between members of the Osage Tribe of Indians in accordance with the custom of the

said tribe existing before statehood is a nullity. A divorce between such members is controlled by the divorce laws of the state and must be effected in accordance therewith..

## 2. Indians—Appealable Orders.

A final judgment or order made by the county court in the administration of the estate of a deceased Osage Indian is appealable the same as final orders or judgments made in estates of other citizens.

(Syllabus by Pryor, C.)

Error from District Court, Osage County; R. H. Hudson, Judge.

Suit between Nicholas Webster and Wahtsa-e-o-she and others to determine heirship. Judgment for Webster, and Wah-tsa-e-o-she and others bring error. Affirmed.

Leahy & McDonald, for plaintiffs in error.

Preston A. Shinn, for defendant in error.

Opinion by PRYOR, C. This is an appeal from the district court of Osage county, Okla., from a judgment determining the heirs entitled to inherit the allotted lands of Lo-tah-tse-a, a deceased Osage allottee Indian.

The facts, in so far as material to the determination of the issues raised on appeal, are as follows: Lo-tah-tse-a and Wah-tsa-e-o-she and Nicholas Webster were full-blood Osage Indians. In March, 1907, Nicholas Webster, in accordance with the Osage Indian custom, was married to Wah-tsa-e-o-she and Lo-tah-tse-a. Thereafter, in July, 1907, in accordance with the Osage Indian custom, Nicholas Webster was divorced from Wah-tsa-e-o-she. During the month of March, 1909, Lo-tah-tse-a divorced the said Nicholas Webster according to the Osage Indian custom. On the 13th day of September, 1909, Lo-tah-tse-a died, leaving surviving her no father or mother and no issue. That she left surviving her To-wah-gah-she, a half-brother and Wah-tsa-e-o-she, half-sister, and George and Julia Dunlap, children of a deceased brother. Lo-tah-tse-a, deceased, had received an allotment of lands of the Osage Tribe of Indians of 657 acres, and left money belonging to her in the hands of the United States government as trustee for her in the amount of $5,819.76.

There are two questions involved in this case on appeal: (1) Whether or not Nicholas Webster was the husband of Lo-tah-tse-a at the time of her death and entitled to share as an heir in her property: (2) whether or not an appeal lies from a judgment of the county court in determining the heirs of a deceased Osage Indian allottee.

The first question depends on whether or not a divorce can be effected between members of the Osage Tribe of Indians after statehood according to the Osage Indian custom, or if such divorces are controlled by the state laws. The county court held that the divorce of Webster by Lo-tah-tse-a, in accordance with the tribal custom, was effective, and that Webster at the time of her death was not her husband, and not entitled to inherit. On appeal to the district court, the divorce was held to be ineffective and Webster was the husband of the deceased and entitled to share as an heir in her estate.

This question, it seems, must be determined from the effect upon the relation of the Indians to the state under the Enabling Act and the Constitution of the state and the incorporation of the Osage Tribe of Indians within the state's jurisdiction, and the intent of the state and federal government as gathered from these laws and acts. The Enabling Act and the Constitution included in and made the Osage Nation a part of the state. The second section of the Enabling Act provides:

"That all male persons, over the age of twenty-one years, who are citizens of the United States, or who are members of any Indian nation or tribe in said Indian Territory and Oklahoma, and who have resided within the limits of said proposed state for at least six months next preceding the election, are hereby authorized to vote for and choose delegates to form a constitutional convention for said proposed state."

Section 1, art. 3, of the Constitution of the state of Oklahoma, provides:

"The qualified electors of the state shall be male citizens of the United States, male citizens of the state, and male persons of, Indian descent native of the United States, who are over the age of twenty-one years."

In the formation of the state it was one of requirements of Congress that these Indians should be allowed to participate in the direction of the affairs of the state and in the formation of the government thereof, also in framing of its Constitution, the fundamental laws of the state. It was specifically provided that the Osage Nation should be allowed to elect delegates to the constitutional convention for the purpose of adopting the Constitution. Clearly, it was the purpose and intent of Congress and of the people of the proposed state in the erection of the state and in creating its government that these Indians should become citizens thereof. It would be anomalous, indeed, to say that the Indians had a right to participate in the making of the laws of the state

and to have a voice in the government thereof and that they were not amenable to the laws of the state. Having the right to participate in the making of the laws of the state and to have a voice in the government thereof, they are, the same as other citizens, entitled to all the rights, privileges, and immunities thereof, but at the same time they must bear the burdens and responsibilities of citizenship and make their conduct conformable to the laws of the state, except where especially exempted therefrom; that their domestic relations since statehood are governed by the laws of the state, and there can be no divorces except such as are recognized by the state, and this is true notwithstanding the fact that Congress reserved in the Enabling Act the right to enact legislation in regard to the Indians and their property. It is clear that it was the purpose and intent of Congress that those Indians should be citizens of the state just as other citizens, with the right reserved to Congress to enact such legislation as it deemed necessary for their protection and the protection of their property.

The second contention of the plaintiff in error is that the judgment of the county court was final and no appeal lies therefrom. Section 3 of the Act of April 18, 1912 (36 Stat. 86, c. 83), gives the county courts of Oklahoma jurisdiction over the property of the deceased Indians. In investing this jurisdiction in the county court, Congress could not have had any reason to have made any distinction between this class of cases and other cases. Certainly there is no reason why under this act, conferring jurisdiction upon county courts of these matters, Osage Indians should be deprived of the right to appeal the same as other citizens, and there is no reason why the county court's judgment should be final.

It must be held that an appeal lies from the judgment of the county court in cases between Indian citizens just the same as would lie between other citizens. The judgment of the trial court should be affirmed.

By the Court: It is so ordered.