## McFARLAND et al. v. HARNED et al.

No. 16134—Opinion Filed Jan. 12, 1926.

### 1. Bastards—Presumption of Legitimacy.

In controversies involving heirship, and the legitimacy of children, the presumption of law is in favor of legitimacy, and the reason back of this presumption is that the law encourages decency, morality, and right living.

### 2. Marriage—Validity of Indian Custom Marriage.

A marriage contracted between members of an Indian Tribe, in accordance with the customs of such tribe, where the tribal relations and government existed at the time of such marriage, and there was no federal statute rendering the tribal customs invalid, will be recognized and upheld by the courts of this state as a regular and valid marriage for all purposes. Such marriages are not to be treated as common-law marriages, but as legal marriages according to the customs of the tribe.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Jefferson County; M. W. Pugh, Judge.

Action by Finerty Investment Company against Arthur W. Harned, Bessie Harned, Willie McFarland, and Grady Lewis to quiet title and for foreclosure of a real estate mortgage. Judgment for plaintiff, and defendants Willie McFarland and Grady Lewis appeal. Reversed.

McDougal, Allen & Pryor and Grady Lewis, for plaintiffs in error.

Mont F. Highley, Bridges & Vertrees, and Anderson & Anderson, for defendants in error.

Opinion by FOSTER, C. In this case Finerty Investment Company, as plaintiff, obtained a judgment in the district court of Jefferson county against Arthur W. Harned, Bessie Harned, Willie McFarland, and Grady Lewis, as defendants, foreclosing a real estate mortgage on certain real estate located in Jefferson county, and adjudging its title to be superior to the claims of the defendant Willie McFarland and Grady Lewis, and determining that the said Willie McFarland

and Grady Lewis had no right, title or interest in and to said real estate.

The defendants Arthur W. Harned and Bessie Harned interposed no defense to the claims of plaintiff under its mortgage. An answer and cross-petition was filed by Willie McFarland and Grady Lewis, in which they claimed to be owners of and entitled to the immediate possession of said land. It was alleged that Willie McFarland derived title to said real estate as the son and heir of Andrew McFarland, a duly enrolled full-blood Choctaw Indian, enrolled opposite roll No. 5560, who died on the 18th day of March, 1909, seized and possessed of said land, and that the said Willie McFarland had thereafter conveyed to the defendant Grady Lewis the undivided one-half interest therein, and they asked that they be adjudged to be the sole owners of said land and entitled to the immediate possession thereof. Answer in the form of a general denial was filed by Arthur W. Harned and Bessie Harned to the cross-petition of their codefendants Willie McFarland and Grady Lewis, and upon the issue thus raised the cause was submitted to and tried by the court, without the intervention of a jury, which rendered its judgment as stated above. There were other issues between Arthur W. Harned and Bessie Harned and their immediate grantor, based on his alleged warranty of title to them, with which we have no concern. Motion for a new trial was filed by the plaintiffs in error, heard, and overruled, from which order and judgment they bring the cause regularly on appeal to this court for review, claiming that the judgment of the trial court is not supported by the evidence and is contrary to law.

This being a law action tried by the court without the intervention of a jury, it follows, under familiar and well-recognized rules of law, that if there is any evidence in the record reasonably tending to support the judgment, it will not be disturbed on appeal, but will be given the same weight as the verdict of a jury.

It is contended by the defendants in error, as we understand it, that there is evidence in the record reasonably tending to support the general finding and judgment of the trial court to the effect that Willie McFarland was an illegitimate son of Andrew McFarland, and therefore is not entitled to inherit his allotment. In order to determine this question, it will be necessary briefly to review the evidence as disclosed by the record, applying thereto rules of law heretofore established in this jurisdiction. A certified copy of the enrollment record of Andrew McFarland and of Willie McFarland was introduced in evidence by the plaintiffs in error, and these instruments established the fact that Andrew McFarland was the father of Willie McFarland and that Lillie Homer was his mother. In other words, these instruments conclusively identified Willie McFarland as the son of Andrew McFarland and Lillie Homer. Page v. Atkins, 86 Okla. 290, 208 Pac. 807; Halsell v. Beartail. 107 Okla. 103, 227 Pac. 392. The parentage of Willie McFarland being thus established by the enrollment record, the presumption is that his parents were lawfully intermarried.

As was said by our court in the case of Locust et al. v. Caruthers et al., 23 Okla. 373, 100 Pac. 520:

"In controversies involving heirship and the legitimacy of children, the presumption of law is in favor of legitimacy, and the reason back of this presumption is that the law encourages decency and morality and right living.

"After a long lapse of time, where proof is given that certain persons are the children of a certain man and woman and were so recognized and treated by the parents and other members of the family, legitimacy will be presumed, even though there was no direct evidence of the marriage of the father and mother."

It is contended by the defendants in error, however, that this presumption of legitimacy is not conclusive, and that in the instant case it is met and overturned by certain evidence in the record to the effect that Andrew McFarland and Lillie Homer never at any time intermarried. It must be conceded that if there is such evidence, the weight of this evidence, as opposed to the strength of the legal presumption of legitimacy above referred to, is a matter with which this court has nothing to do, but that the finding thereon of the trial court, as the trier of the facts, is conclusive in this court on appeal. Several witnesses were produced and testified on behalf of plaintiffs in error in the trial court, all of whom undertook to testify concerning the relationship between Andrew McFarland and Lillie Homer about the year 1893. Some of these witnesses were near relatives of Andrew McFarland, with whom Andrew and Lillie resided during a part of the time of their alleged marriage. Defendants in error offered no testimony in conflict with that offered by the plaintiffs in error and admitted; to establish the nature of the relationship existing between Andrew McFarland and Lillie Homer at the time Willie McFarland was born, but content themselves with the argument that some of this testimony, whatever may have been the theory upon which

it was offered, tended to show that Andrew McFarland and Lillie Homer were not husband and wife. It must be remembered that practically all of these witnesses were Choctaw Indians, whose testimony related to a transaction occurring at a time when the domestic habits of the Choctaw Tribe of Indians were to some extent still governed by tribal usages and customs originating in primitive times. P. J. Hudson testified that he was 60 years old, was educated in Drury College, Springfield, Mo., and was acquainted with the customs of Choctaw Indians in regard to marriages and divorces from 1890 to 1900: that during this time, while they had laws regulating marriage, it was the custom for a man and woman to start living together, and they were considered husband and wife and no one interfered. Other witnesses, some of whom were relatives of Andrew McFarland, while testifying that they knew it to be a fact that Andrew McFarland and Lillie Homer had never married, nevertheless testified that according to tribal custom a man and a woman could be husband and wife without being married. Cephas John, a brother-in-law of Andrew McFarland, testified as follows:

"Q. What was the general understanding around in the neighborhood and among the Choctaws as to their being husband and wife? A. At that time it was the custom for a man and woman to live together without being married, and they were considered as man and wife and everybody in the community there said this woman was the wife of Andrew McFarland and was so considered."

The record discloses that about the year 1893, Andrew McFarland left his home and shortly thereafter returned, bringing with him Lillie Homer, the mother of Willie McFarland. There is no proof in the record of the circumstances under which Andrew McFarland met Lillie Homer and secured her consent to cohabit with him, but the record does disclose that upon his return they were received and admitted into the homes of his kinspeople as husband and wife. After visiting among Andrew's kinspeople for a time they rented a home from Christine Solomon and kept house until the following spring, when they separated. About two months after the separation plaintiff in error Willie McFarland was born. During the whole period of cohabitation, covering some seven or eight months, no evidence was introduced tending to show that their cohabitation was immoral or adulterous, but it was established that they were generally recognized and considered by the members of the tribe, and particularly by their kins-

people, as husband and wife; and while some of the near relatives of Andrew McFarland testified that they knew that Andrew and Lillie had never married, by the testimony of these same witnesses it was proven that the status of husband and wife had been established between the parties by the common consent of the members of the tribe in accordance with a prevailing tribal custom. It may be conceded that at or about the time the relationship between Andrew and Lillie commenced, custom marriages between members of the Choctaw Tribe were gradually being superseded by ceremonial marriages, and it is apparent to us that it was such ceremonial marriage that some of the witnesses had in mind when they testified that they knew that Andrew and Lillie had not married. It is clear to us that these witnesses, when they were talking about the omission of Andrew and Lillie to marry, were referring obviously to a common-law or ceremonial marriage and not to the status of husband and wife, which, by their conduct in living together, had been established between them by common consent of the members of the tribe.

Marriage, according to tribal customs, is neither a common-law nor a ceremonial marriage, but is nevertheless a legal marriage according to the customs of the tribe, when such customs are recognized by Congress as regulating their domestic relations. Buck v. Branson, 34 Okla. 807, 127 Pac. 436.

Our court said in Cyr v. Walker, 29 Okla. 281, 116 Pac. 931:

"So long as Indians live together under tribal relation and tribal government, they are subject only to the jurisdiction of Congress. The civil laws of the state do not extend to them. As long as they live in their tribal relations, they have been regarded by the government and by the courts as dependent governments, subject to the will of Congress and under the laws of the United States. They have been uniformly recognized as capable of regulating and managing their own tribal affairs, including their domestic relations; and domestic relations formed under their customs and laws have been treated by the courts as valid."

To say that the judgment of the trial court can be sustained merely because some of the witnesses testified they knew that Andrew and Lillie had not married is to put a strained and unnatural construction upon their testimony, not justified by the context in which such testimony is found. We know of no rule of law or of sound public policy which would justify us in withholding from this union the same presumptions of good faith usually indulged by the courts in favor of marriage generally, merely because

the relationship does not conform to the domestic practices of a more civilized society. The marriage was recognized as valid by the tribal customs of the Choctaw Indians obtaining in that day, and will be so recognized by this court, in harmony with the rule generally adhered to by the courts of the American Union from the earliest times. Cyr v. Walker, supra.

A careful review of the entire record convinces us that there was no testimony offered in the trial court to support the judgment of the trial court denying the claim of the plaintiff in error Willie McFarland, as the owner by inheritance of an allotment of his deceased father, Andrew McFarland.

It is insisted that the appeal of plaintiffs in error should be dismissed for the reason that brief of plaintiffs in error does not contain the specifications of error relied on separately set forth as required by rule 26 of this court. It is sufficient to say that plaintiffs in error have filed a reply brief in which the omission complained of has been supplied. In our judgment this constitutes a substantial compliance with said rule 26, and the motion to dismiss is therefore without merit.

It follows that the judgment of the trial court must be reversed and the cause remanded, with directions to the trial court to set aside its judgment herein and render judgment in favor of the plaintiffs in error in accordance with the prayer of their cross petition.

By the Court: It is so ordered.

Note.—See under (1) 7 C. J. pp. 940, 941, § 5; 3 R. C. L. p. 725; 1 R. C. L. Supp, p, 883; 4 R. C. L. Supp. p. 214; 5 R. C. L. Supp. p. 198. (2) 38 C. J. p. 1278 § 4.