MAYSE v. NEWMAN et al.

No. 29537.   May 27, 1941.

Rehearing Denied Nov. 4, 1941.

*118 P. 2d 398.*

A. T. Woodward and Ralph A. Barney, both of Pawhuska, for plaintiff in error.

A. M. Widdows, of Tulsa, Charles. W. Pennel, of Bartlesville, Royce H. Savage, of Tulsa, C. H. Davis, of Oklahoma City, and J. M. Humphreys, of Tulsa, for defendants in error.

RILEY, J. This is a probate proceeding originating in the county court of Tulsa county.

Determination of the heirs of Peter Captain, an incompetent Osage Indian, is involved.

Peter Captain died intestate in Tulsa county on April 28, 1938, leaving an estate of considerable value, and part of which was located in Tulsa county. An administrator of his estate was appointed in said county.

Thereafter a petition for determination of his heirs was filed in said court by George Newman and others claiming to be the sole and only heirs of said Peter Captain. They claim as children of two deceased sisters of Peter Captain. Ida Rogers Mayse filed a plea termed an answer and cross-petition, wherein she claims to be an heir, in that she was a daughter of Lillie Captain, deceased, and that Lillie Captain was a half sister of Peter Captain. There were other claims of heirship filed. One of said claims is the subject of a separate appeal.

After amendment of the pleadings, the matter was tried in the county court resulting in a finding that Ida Rogers Mayse was entitled to share in the estate along with the nine original petitioners as the sole and only heirs. Appeal was taken to the district court on questions . of law and fact. On trial de novo, the petition of Ida Rogers Mayse was denied, and she appeals.

Peter Captain was never married. He left no lineal descendants, no father, no mother, no brothers or sisters.

The ancestor, through whom all the parties to this appeal claim, was August or Augustus Captain, a half-blood Osage Indian. It is established that August Captain was married to Jane Moore, by a Catholic priest, on June 18, 1847, at St. Paul, Kan. They moved to the Osage Indian Reservation, now a part of Oklahoma, about 1870, and lived together as husband and wife until the death of August Captain in August, 1878. To that marriage four daughters and one son were born; Peter Captain was that son. The daughters were Susan, Isabell (Bell), Julia, and Rosa. Susan died August 12, 1902, leaving surviving her three daughters, Telina Waters, Delilah Griener, and Arania Mickels, and one son, Charles Tayrien.

Bell died in November, 1893, leaving surviving her, five children, George Newman, son; Estella Park, daughter; Early I. Yeargain, son; Verona Styll, daughter; and Leona Pfuhl, daughter.

Rosa died April 26, 1938. She left no living children, but did leave three grandchildren.

There were also twelve grandchildren of Susan. These were children of deceased sons and daughters of Susan other than the ones above mentioned. The parents of these twelve grandchildren all died prior to the death of Peter Captain. The four surviving children of Susan and the five surviving children of Bell are all conceded to be nieces and nephews of Peter Captain, and of the next of kin and entitled to share in his estate.

It is likewise established that Ida Rogers Mayse was the daughter of Lillie Captain.

The trial court found that Lillie Captain was the daughter of August Captain by a woman other than Jane Moore Captain. This finding is not seriously questioned and may be considered as an established fact. Then Lillie Captain was

the half sister, by blood, of Peter Captain.

The only question is whether Lillie was the legitimate daughter of August Captain. This question depends upon whether there was a lawful marriage between August Captain and the mother of Lillie.

The record shows that Lillie Captain was born late in 1864 or early in 1865. The old records, at St. Francis Catholic Church, St. Paul, Kan., show she was baptized November 11, 1865, and was at that time about ten months old.

The trial court found that the evidence was insufficient to show a marriage between August Captain and the mother of Lillie Captain, but found there was a valid marriage between August Captain and Jane Moore, on June 18, 1847, and that they were husband and wife from that date until the death of August Captain in 1878.

The trial court's conclusion of law was that Lillie Captain, the mother of Ida Rogers Mayse, could not inherit from the estate of August Captain, and for this reason her daughter, Ida Rogers Mayse, could not inherit from Peter Captain.

This conclusion of law amounts to a finding that Lillie Captain was the illegitimate child of August Captain, and for that reason her daughter was disinherited.

Plaintiff in error contends that this is error because the trial court overlooked or refused to recognize the fact that plural marriages were recognized as valid under the usages and customs of the Osage Indian Tribe until after the date of the death of August Captain.

If plural marriages were permitted and recognized as lawful under the usages and customs of the Osage Indians at the times mentioned, Lillie Captain could have been the legitimate child of August Captain, notwithstanding the fact that August Captain did, at the time, have a living wife other than the mother of Lillie.

That plural marriages were common among the members of the Osage Indian Tribe, prior to statehood, is established beyond question by the evidence. It is also recognized as a historical fact. All the witnesses agree that such was the custom and all agree that prior to statehood such marriages were common, and that they were recognized in the tribe as lawful.

In Wah-tsa-e-o-she et al. v. Webster, 69 Okla. 257, 172 P. 78, it is stated:

"Lo-tah-tsa-a and Wah-tsa-e-o-she and Nicholas Webster were full-blood Osage Indians. In March, 1907, Nicholas Webster, in accordance with the Osage Indian custom, was married to Wah-tsa-e-o-she and Lo-tah-tse-a. Thereafter, in July, 1907, in accordance with the Osage Indian custom, Nicholas Webster was divorced from Wah-tsa-e-o-she. During the month of March, 1909, Lo-tah-tse-a divorced the said Nicholas Webster according to the Osage Indian custom."

It is well settled that where there is no act of Congress prohibiting plural marriages among tribal Indians, and customs of the tribe permit polygamous marriages, the state laws regulating marriage have no application to the members of such tribes; the children of such marriages are lawful heirs of their father. Hallowell v. Commons et al. (Neb.) 210 Fed. 793; Ortley v. Ross et al., 78 Neb. 339, 110 N. W. 982; Kobogum et al. v. Jackson Iron Co., 76 Mich. 498, 43 N. W. 602.

A plural marriage of Creek Indians occurring as late as 1887 was recognized as valid in Oklahoma Land Co. et al. v. Thomas et al., 34 Okla. 681, 127 P. 8.

The same is true as to plural marriages under the laws and customs of the Seminole Tribe, prior to dissolution of tribal government. Pompey v. King et al., 101 Okla. 253, 225 P. 175.

There is some evidence and some contention that the plural marriages in the Osage Indian Tribe were limited to full-blood Indians and were not permitted or did not prevail among half-bloods. The effort to establish this limitation

herein failed, as instances were presented in evidence of half-bloods having more than one wife.

Furthermore, for a long period of time down to the removal of the tribe to the reservation into what is now Oklahoma, all Indians of half blood or more were considered or treated as full-bloods. No distinction was ever pointed out in any law, rule, or custom of the tribe. It is fully established that plural marriage was permissible, and lawful among the tribe, both as to full-bloods and half-bloods.

This brings us to the question of whether there was a marriage between August Captain and the mother of Lillie Captain. Many authorities are cited going to the question of requisite proof of marriage. Many cases are cited which have no application because they relate to what is often referred to as "common-law" marriages between citizens of the states other than tribal Indians. They shed little light on the subject because tribal Indian marriages are regulated neither by the common law nor the statutory law. Tribal Indians knew nothing about the common law of England; they never became subject thereto, except as they cast aside tribal relations and became citizens of the several states, and assumed duties and obligations thereunder. McFarland et al. v. Harned et al., 115 Okla. 291, 243 P. 141. In the cited case the rule was stated that:

"Such marriages are not to be treated as common-law marriages, but as legal marriages according to the customs of the tribe."

In Johnson v. Johnson's Administrator et al., 30 Mo. 72, the court quotes with approval from a work published by Mr. Schoolcraft, concerning the manners and customs of the North American Indian, wherein he said:

" 'The marital rite is nothing more, among our tribes, than the personal consent of the parties, without requiring any concurrent act of a priesthood, or magistracy, or witnesses; the act is assumed by the parties without the necessity of any other extraneous sanction except parental consent. Presents are, however, often made, if the parties are able. It is also disannulled and the wife dismissed from the wigwam whenever the husband pleases, or the marital state is continued under the evils of discord or a state of polygamy. The latter is, however, the usual method among the hunter and prairie tribes. But the ties of consanguinity are still strictly acknowledged; children become possessed of all their natural rights, and family tradition traces these to their remotest links.' "

There is also quoted with approval from the case of Wall v. Williamson, 11 Ala. 826, the following statement:

" 'Marriages among the Indian tribes must be regarded as taking place in a state of nature; and if, according to the usages and customs of the particular tribe, the parties are authorized to dissolve it at pleasure, the right of dissolution will be considered a term of the contract.' "

Defendants in error, and apparently the trial court, were of the view that the burden was upon Ida Rogers Mayse to prove, by independent evidence, the marriage between August Captain and the mother of Lillie Captain, but as we view the law, since it was conclusively shown or admitted that August Captain was the father of Lillie Captain, and there being nothing to prohibit a valid marriage, such marriage will be presumed, especially where the question of legitimacy of the child is concerned and a long period of time has elapsed. This rule was stated in the early case of Locust et al. v. Caruthers et al., 23 Okla. 373, 100 P. 520. Therein it is held:

"In controversies involving heirship and the legitimacy of children, the presumption of law is in favor of legitimacy, and the reason back of this presumption is that the law encourages decency and morality and right living."

And:

"After a long lapse of time, where proof is given that certain persons are the children of a certain man and woman and were so recognized and

treated by the parents and other members of the family, legitimacy will be presumed, even though there was no direct evidence of the marriage of the father and mother."

See, also, McFarland et al. v. Harned et al., supra; and Wright v. Tehee, 101 Okla. 136, 224 P. 163.

In Cox et al. v. Colbert, 135 Okla. 218, 275 P. 317, it is said:

"The presumption that every child is the offspring of a lawful marriage, and that the mother, either by actual marriage or by cohabitation and recognition, was the lawful wife of the father, can only be rebutted by clear proof to the contrary."

Byington v. Wilhelm et al., 120 Okla. 190, 250 P. 1025, quotes with approval from Adger v. Ackerman, 115 Fed. 126, the following:

" 'The legal presumption is that every child is the fruit of a lawful, rather than a meretricious union. . . . Every intendment is indulged in favor of legitimacy and it is one of the strongest presumptions of the law.' "

The evidence shows that August Captain aided in preparing the first annuity roll of the Osage Indian Tribe in 1878. This roll was prepared apparently shortly before his death. He died before the annuity payments were made thereunder.

Therein in recording his own family he listed:

First: Augustus Captain, aged then 58 years; next, Peter Captain, son, age 16; next, Lillie Captain, daughter, age 15.

Annuity payment for that year was received by Jane Captain. In addition thereto, in July, 1889, eleven years after the death of August Captain and sometime after the death of Lillie Captain, who had theretofore married Thomas Rogers, father of Ida Rogers Mayse, there was filed with the Osage agency an instrument signed by Susan, Isabella Yeargain, and Rosa Hoots, the three daughters of August Captain, and sisters of Peter Captain, wherein it is stated:

"An Article of Agreement:

"We, the undersigned, heirs of Augustus Captain, deceased, hereby recognize Ida Rogers, infant daughter of Thomas Rogers and Lillie Rogers (formerly Lillie Captain) as an heir to the estate of Augustus Captain. She, Lillie Rogers, being a half sister of the signers hereto and entitled to her proportionate interest in said Captain's estate."

This instrument does not relate to the estate or interest of Peter Captain, but is evidence that the three half sisters of Lillie Captain then recognized her as the legitimate daughter of August Captain. This fact, when taken in connection with the evidence that August Captain aided in preparing the first tribal annuity roll, shows clearly that Lillie Captain was recognized as the daughter of August Captain and as a member of the family.

There is, then, a clear presumption of marriage and of consequent legitimacy.

As pointed out in Cox et al. v. Colbert, supra, this presumption can only be rebutted by clear proof to the contrary. The only proof relied upon to the contrary is the fact that August Captain had a lawful wife at the time he is presumed to have married the mother of Lillie. This could not rebut the presumption of a marriage where plural marriages were permitted.

Some reliance is placed upon the fact that when Lillie was baptized, the entry was made by the priest that she was the natural child of August Captain, thus intimating that she was illegitimate.

But we consider this of little importance. It is only the opinion of the priest that she was only a natural child. There is no pretense that the marriage was ever sanctioned by the church, but its validity, as concerns the matter of inheritance, requires no such sanction.

The trial court erred as a matter of law in holding Ida Rogers Mayse not entitled to inherit.

Judgment is reversed and the cause remanded, with directions to enter judgment, insofar as the claim of Ida Rogers Mayse is concerned, in accordance with the views herein expressed.

CORN, V.C.J., and OSBORN, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., and BAYLESS and GIBSON, JJ., absent.