### WRIGHT, Supt., v. LAMB, Gdn.

No. 14812—Opinion Filed Dec. 30, 1924.

On Rehearing, Jan. 20, 1925.

(Syllabus.)

**1. Appeal and Error—Review on Transcript—Agreed Statement of Facts.**

An agreed statement of facts submitted to the court upon which to render judgment is a part of the record and can be brought to this court on appeal by transcript.

**2. Indians — Federal Restrictions as to Amount of Funds Furnished by Guardian to Osage Ward.**

The provisions of section 4, of the act of Congress of March 3, 1921 (41 St. at L. 1249), does not restrict a county court of the state of Oklahoma, or a guardian of the estate of an incompetent Osage Indian by it appointed, in the amount of funds to be paid by the guardian out of the estate of the ward, in his hands, to such ward or for his benefit.

Error from District Court, Osage County; Jesse J. Worten, Judge.

From judgment approving report of Arthur H. Lamb, guardian of Mary Pryor, J. Geo. Wright, Superintendent of Osage Agency, appeals. Affirmed.

J. M. Humphreys, for plaintiff in error.

Gray & Palmer, for defendant in error.

LYDICK, J. In this case, the county court of Osage county adjudged Mary Pryor to be an incompetent person, and appointed Arthur H. Lamb as the guardian of her estate. He filed his report as guardian in said county court on December 10, 1921, showing upon its face that from May 9, 1921, to December 9, 1921, he had expended funds of his ward and for her benefit in the sum of $4,885.97. Therein he prayed for the approval of his acts, and upon hearing, the county court entered its judgment accordingly. J. George Wright, as Superintendent of the Osage Nation, made no appearance to contest the hearing upon this report and filed no pleading in the county court. He thereafter perfected his appeal from the county court judgment to the district court of Osage county. Upon proper hearing, the district court rendered and entered its judgment approving the guardian's report. By petition in error with transcript of the record attached thereto, J. George Wright, as such superintendent, brings this case here on appeal. He urges only two assignments of error, same being in haec verba as follows, to wit:

"That the judgment of the county court is contrary to law."

"That said court erred in overruling motion by plaintiff in error for a new trial."

The agreed statement of facts filed in the district court, and upon which judgment was rendered, is a part of the record, and therefore properly here by transcript. See Patterson v. Carter, 83 Okla. 70, 200 Pac. 855. That statement shows that the ward is an Osage Indian. The sole reason given by plaintiff in error to support his two specific assignments of error stated above is this, to wit: that under certain acts of Congress, the guardian of an incompetent Osage Indian is prohibited from paying out of the funds of his ward either to the ward or for the benefit of the ward, an amount exceeding the sum of $1,000 quarterly. On April 18, 1912 '37 St. L. 86), Congress amended the act of June 28, 1906 (34 St. L. 539). In this act, among other things, it is provided:

"That the property of deceased and of orphan minor, insane, or other incompetent allottees of the Osage Tribe, such incompetency being determined by the laws of the state of Oklahoma, which are hereby extended for such purpose to the allottees of said tribe shall, in probate matters, be subject to the jurisdiction of the county courts of the state of Oklahoma. * * *"

By this act, the United States merely relinquished its jurisdicton over these probate matters. The Osages being residents of the state of Oklahoma and with property located therein, do thereupon, naturally, come under the laws of the state of Oklahoma and the jurisdiction of its probate courts.

In the act of March 3, 1921 (41 St. L. 1249), Congress lays down certain hard and fast rules to control the conduct of the Secretary of the Interior in handling the funds belonging to the members of the Osage Tribe of Indians. The funds covered by the act are: "Interest on trust funds, the bonus received from the sale of leases, and the royalties received."

The act of Congress limiting the payment of $1,000 quarterly applies only to the Secretary of the Interior. It does not limit or restrict the right of the county court of the state of Oklahoma or the guardian by it appointed in the payment from the ward's own funds to the ward or for his benefit. These rights and duties are limited only by the laws of the state of Oklahoma, and the sound legal discretion of the county court. There is no reason to support the theory that Congress otherwise intended. The fact that Congress thought it necessary to limit the power of the Secretary as to the amount of money he should pay to an incompetent

Osage Indian who had no guardian affords no reason, even by analogy, for the placing of such limitation upon the county courts of record of this state, to whom Congress relinquished that jurisdiction. The Congress well knew the provisions of the statutes of this state which would control the county courts and knew that no such limitations were to be found in those laws. It must be presumed that Congress had full faith in the integrity of our county courts and the guardians whom they would appoint and was willing to leave the distribution of the ward's estate to the sound legal discretion of the Oklahoma judiciary.

The Supreme Court of the United States has effectively disposed of the question here considered. See Hubert Work, Secretary of the Interior, v. The United States ex rel. Lynn, Guardian, decided at the October, 1924, term and not yet officially reported. Considering the statute here involved, that court said:

"The investment clause obviously refers to the moneys which are withheld, not to those which are paid. Where the payment is to a guardian, the county court alone is empowered to direct and control the investment of what is paid. This is apparent when the section is read, as it should be, with section 3 of the Act of 1912, before quoted. Under the latter the Secretary may invoke action by the county court in respect of any matter affecting the Indian Ward's estate, and, where he does, he is entitled as of right to a full consideration of the matter presented; but he can exercise no direct control over the use or investment of the money after it is paid to the guardian."

The court specifically holds that after the Secretary has paid the funds over to the guardian he can exercise no control over its use. This control is vested in the county court.

It appears from the record that the ward in this case is an Osage Indian woman past 80 years of age. She has no one dependent upon her for support. Her tangible estate is of value to exceed $100,000. She has a minimum annual income of more than $10,000. She has no heir except a son, financially independent, by virtue of his Osage heritage alone, and with an annual income equal to that of his mother. The amount paid by the guardian to and for the benefit of this aged Indian woman from her own funds is less than $700 per month, perhaps not more than the monthly income from her tangible estate, and far less than her monthly pro rata share in the oil royalties of her tribe.

According to the inevitable laws of nature, she has but few more days on earth. The honesty and integrity of the guardian is conceded in this case and it is not denied, and from the record it affirmatively appears, that the money has been well expended for the ward's benefit. This money belongs to this Osage Indian woman, a rightful heritage of her noble ancestors. Living under a civilization not of her choosing, the most liberal expense of funds in her behalf affords her little enough of deserved pleasures. What useful and rightful purpose can be served by a niggardly conservation of her estate at the sacrifice of the satisfaction of her just desires. It would merely leave at her death a larger estate to pass in to the hands of her son, who needs none of her fortune—a larger estate from which she can be put to rest in a more gorgeous casket reposing beneath a greater bed of roses which she then cannot adore. To attain such an undesirable result, we have no inclination to give to this act of Congress the strained and unnatural construction urged by the plaintiff in error. We approve the evident theory of the lower courts that this Osage Indian woman be permitted herself to enjoy now this her own rightful heritage in which no one can have an adverse interest.

We find no error in the proceedings of the lower court, and the judgment of the district court is therefore affirmed.

JOHNSON, C. J., and BRANSON, KENNAMER, and HARRISON, JJ., concur.

### On Application for Rehearing.

PER CURIAM. On application to file second petition for rehearing, it is pointed out by the plaintiff in error that the opinion of this court filed December 30, 1924, which changed and modified the opinion filed herein February 12, 1924, to conform to the reasoning of the Supreme Court of the United States in the case of United States ex rel. Lynn v. Fall, Secretary of the Interior (Work v. United States), as said opinion is interpreted by this court, is shown to have been concurred in by Johnson, Chief Justice, and Harrison, Branson, and Kennamer, Associate Justices, and that Justice Kennamer was not a member of this court at the date, to wit, December 30, 1924, said corrected opinion was filed.

On consideration of said application, the said opinion as filed December 30, 1924, is by the court as now constituted, approved, all of the Justices of this court as now constituted concurring therein. We deem

.it, therefore, unnecessary to withdraw the opinion, but that the same shall be considered as adopted, and the motion for leave to file second petition for rehearing is denied.