## HARDRIDGE v. HARDRIDGE et al.

No. 21225. March 20, 1934.

Rehearing Denied April 10, 1934.

Herbert E. Smith, for plaintiff in error.

Cochran & Noble, S. L. O'Bannon, G. R. Horner, Alvin Richards, and F. A. Calvert, for defendants in error.

BUSBY, J. This action was commenced in the district court of Okmulgee county on February 27, 1928, by Jasper Hardridge, an enrolled full-blood Indian citizen of the Creek Nation. He seeks to recover from Joe Hardridge, and other defendants claiming through or under him, an undivided one-half interest in the allotment of Taylor Hardridge, a full-blood enrolled Indian citizen of the Creek Nation, who died intestate on or about April, 1911. At the time of his death Taylor Hardridge was seized and possessed of certain personal property and of his homestead and surplus allotment previously patented to him as a member of the Creek Tribe, which was described as follows: N. E. ¼ of S. E. ¼, section 14, and S. W. ¼, N. W. ¼, and N. ½, N. W. ¼, S. W. ¼, section 13, and S. E. ¼, N. E. ¼, and E. ½, N. W. ¼, S. E. ¼, section 14, twp. 13 north, range 12 east, Okmulgee county, Oklahoma.

All restrictions upon alienation of 80 acres of the above-described land had been removed in 1909 by the Secretary of Interior.

On May 2, 1911, one Mark R. Moore, guardian of Joe Hardridge, son of the deceased, filed in the county court of Okmulgee county a petition for letters of administration over the estate of Taylor Hardridge. In the petition it was recited that the property of the estate consisted of corn, household goods, and the allotted lands above described.

Mark R. Moore was duly appointed administrator of the estate and as such filed an inventory and appraisement showing the above-described real estate and personal property as assets of the estate. The estate remained in the possession of and under the control of the administrator until final distribution in 1921. On January 5, 1921, the administrator filed his final account and request for distribution of the estate to Joe Hardridge, son of the deceased and one of the defendants in the trial court, who was therein alleged to be the sole and only heir of Taylor Hardridge. In the final account it was shown that the administrator had in his possession for distribution a final balance in the sum of $207 in cash. Notice by publication of the intended settlement of account and distribution was duly published, and thereafter, on the 8th day of February, 1921, the county court made and entered its final decree whereby the final account was approved. Joe Hardridge, who was a Creek Indian citizen of one-half blood, was declared and adjudged to be the sole and only heir of Taylor Hardridge, deceased, and the personal property consisting of the money in the hands of the administrator as well as the allotment of Taylor Hardridge was ordered distributed to him.

At the time the decree of distribution was entered, the plaintiff, Jasper Hardridge, was still a minor. He became an adult March 5, 1926. He did not perfect an appeal to the district court from the decree of distribution and determination of heirship either before or after reaching his majority.

While the estate of Taylor Hardridge was in the process of administration, the plaintiff, Jasper Hardridge, through his next friend, Taylor Bear, appeared therein for the purpose of asserting the claim being made in this action, namely, that he was the grandson of Taylor Hardridge and was entitled to a one-half interest in the lands belonging to the deceased allottee. This claim was asserted in a petition for the determination of heirs of Taylor Hardridge filed by the plaintiff through Taylor Bear on May 29, 1912. The claim of the plaintiff was contested by Joe Hardridge. The contest was heard by the county court on its merits on April 4. 1913. That court then decided that the claim of the plaintiff was without merit and that he was not related to the deceased, Taylor Hardridge. The plaintiff, Jasper Hardridge, undertook to appeal from that decision to the district court, but the attempted appeal was dismissed in the district court on the theory that it was not perfected within the time allowed by law for such purpose.

Other proceedings were thereafter had in which the plaintiff unsuccessfully undertook to set aside the decision of the county court on April 4, 1913, determining that he was not an heir of Taylor Hardridge.

Under the view we take of this case a discussion of these proceedings is unnecessary, and we shall therefore refrain from burdening this opinion with a detailed analysis thereof.

All of the other defendants in the case are claiming interests in the land in controversy which they acquired from Joe Hardridge.

This action came on for hearing before the trial court without the intervention of a jury on the 3rd day of February, 1930. The respective parties made their opening statements. The truth of the facts as stated in the foregoing portions of this opinion was established by the pleadings and opening statements and by stipulation of counsel made in connection therewith. The respective parties thereupon moved for judgment on the pleadings and opening statements. The trial court decided that there was no issue of material fact requiring the introduction of evidence, and that on the facts as established by the pleadings and opening statements the defendants were entitled to judgment. Judgment was rendered accordingly.

The plaintiff, Jasper Hardridge, has perfected his appeal from the judgment rendered and appears in this court as plaintiff in error. The defendants in error herein were defendants in the trial court. The parties will be referred to in this opinion as plaintiff and defendants, respectively, when not otherwise designated.

It is the claim of the plaintiff that he is the grandson of Taylor Hardridge, deceased, and as such is entitled to an undivided one-half interest in the allotment of the deceased. That in this action he pleaded the fact of his relationship, and was entitled to introduce proof in support of this allegation of fact.

The defendants, on the other hand, contend that the fact that he was not an heir of Taylor Hardridge, deceased, was conclusively established in connection with the administration of the estate in the county court of Okmulgee county. They rely principally on the determination of heirship made on final distribution of the estate on February 8, 1921.

Probate courts of this state have jurisdiction to determine heirship as an incident to final distribution in all cases properly falling within their jurisdiction by virtue of the provisions of sections 1359-1362, C. O. S. 1921, 1358-1361, O. S. 1931. Such a determination of heirship, when made in the manner prescribed by statute, is conclusive and binding upon all claimants unless an appeal is taken, at least as to the property over which the court has jurisdiction. Hogan v. Superior Court of Okmulgee County, 122 Okla. 295, 254 P. 966; Hutson v. McConnell, 139 Okla. 240, 281 P. 760; Hilton v. Coyne, 103 Okla. 279, 229 P. 630; Gray v. McKnight, 75 Okla. 268, 183 P. 489. It likewise appears that a determination of heirship made on final distribution of the property of an estate is final and conclusive as to the interests of heirs in the homestead property even though the homestead is not assets in the hands of the administrator for the payment of claims against the estate. However, it is not conclusive as to the right to possession of the homestead. Ward v. Cook, 152 Okla. 234, 3 P. (2d) 728; Pennington v. Woodner-McGaugh, 54 Okla. 110, 153 P. 875; Wares v. Knabe, 84 Okla. 66, 202 P. 774; Randell v. Hickman, 114 Okla. 190, 245 P. 589.

The power of the court to distribute property under its control and to determine heirship as an incident thereto is, in theory, jurisdiction in rem over the property to be distributed. National Exploration Co. v. Robins, 140 Okla. 260, 283 P. 236; Monk v. Morgan (Cal. App.) 192 P. 1042. While the power of the probate court to determine heirship as an incident to distribution in connection with the final distribution of an estate would seem to depend upon the existence of property subject to administration, yet its jurisdiction to appoint an administrator may arise from the domicile of the deceased in the county, and does not depend upon the existence of property which constitutes assets in the hands of the administrator. Wolf v. Gills, 96 Okla. 6, 219 P. 350.

Viewing the case at bar in the light of the foregoing principles of probate jurisdiction, the domicile of the deceased, Taylor Hardridge, in Okmulgee county, presented a proper case in which the county court could exercise its jurisdiction to appoint the administrator in 1911, regardless of whether he died seized and possessed of property which would constitute assets in the hands of his administrator and be subject to the payment of debts or any part of the debts against the estate.

After the appointment of an administrator, however, and in order for the county court to determine heirship as an incident to distribution, it became essential that some property constituting assets of the estate come into possession of the administrator. This gives rise to a disputed question in this case. It is the claim of the plaintiff that no portion of the allotment of Taylor Hardridge constituted assets in the hands of the administrator, and was therefore not subject to distribution by the probate court. Restricted lands of full-blood Indian citizens of either of the Five Civilized Tribes were not assets in the hands of the administrator. Wolf v. Gills, supra; Cowokochee v. Chapman, 90 Okla. 121, 215 P. 759; Bilby et al. v. Noble et al., 106 Okla. 302, 234 P. 198. The reason for this rule is that by reason of the restrictions on such lands, they were not chargeable with the debts of the deceased.

Section 1 of the Act of Congress of May 27, 1908 (35 Stat. at L. 312), relating to the Five Civilized Tribes, removed the restrictions on the allotted lands of certain classes of allottees classified according to quantum of Indian blood. It likewise authorized the removal of such restrictions by the Secretary of the Interior on the allotted lands of full-blood Indians. Section 4 of the act under consideration provides:

"That all land from which restrictions **have been or shall** be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes: Provided that allotted lands shall not be subjected or held liable to any form of personal claim, or demand, against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law."

The proviso in the above-quoted section protects the land from involuntary alienation by virtue of a claim or demand arising prior to the removal of restrictions.

Counsel for the plaintiff concede in their brief that the removal of restrictions by the Secretary of Interior under authority of the act has exactly the same effect as the removal of restrictions accomplished by the act itself on the allotment of an Indian citizen having a lesser quantum of Indian blood; they say in their brief:

"Removal of restrictions by act of Congress, **by the Secretary** and by the death of the allottee are the only ways restrictions can be removed, and the **effect under either of said three ways is identical.**"

By reason of this statement, we shall not discuss the difference, if any, which exists between a removal of restrictions by the Secretary of the Interior under authority of the act and the removal of restrictions by operation of the act itself.

In the case of Teague v. Smith, 85 Okla. 12, 204 P. 439, this court had before it a case involving the allotted lands of a 1/32 blood Creek Indian. Under the provisions of section 1 of the Act of May 27, 1908, supra, these lands were unrestricted. In disposing of that case this court said:

"It is obvious, under section 1 of said act, supra, that the lands in question, being the allotment of a member of the Creek Tribe of Indians enrolled as a one thirty-second Indian by blood, are unrestricted lands; that under section 4 of said act, supra, said lands are subject to the laws of the state of Oklahoma, the same being free from restrictions"

—and also:

"It is plain that the lands in controversy being free from restrictions, the probate court of Oklahoma county had jurisdiction of the settlement of the estate of Frank Smith, deceased. Therefore, if proper notice was given on the hearing for the distribution of said estate, the decree of the probate court distributing the estate is conclusive and binding until set aside, reversed, or vacated in a proper proceeding."

Likewise, in the case of Fuller v. Holderman, 114 Okla. 136, 244 P. 417, this court held that the removal of restrictions by the Act of 1908 rendered the land subject to the payment of debts of a deceased incurred after restrictions were removed, and therefore such land became assets in the hands of the administrator and could be subjected to the payment of such debts.

In the case at bar we are confronted with a situation in which the Secretary of the Interior, in 1909, some three years prior to the death of the allottee, removed restrictions on 80 acres of the allotted land for all purposes. Under the rule announced in Teague v. Smith, supra, and Fuller v. Holderman, supra, the land was subject to the jurisdiction of the probate court and the decree of distribution made in 1921, in conformity to the statute, operated to establish the heirship of the deceased with relation thereto.

Of course, if upon distribution such land had passed into the hands of a restricted Indian heir, it could not have been alienated by such heir without the approval of the probate court having jurisdiction to settle the estate of the deceased allottee by virtue

of the first proviso of section 9 of the Act of May 27, 1908, supra, which reads:

' Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

The purpose of this proviso is to guard against the possible improvidence of a full-blood Indian heir, and to constitute the county court an administrative agency to protect him against his own improvidence or folly. The existence of the proviso does not militate against the application of the doctrine of Teague v. Smith, supra, to the case at bar. It is the removal of restrictions prior to the death of the original allottee that rendered the property assets in the hands of the administrator of his estate and subject to the jurisdiction of the probate court of the state of Oklahoma. Of course, such property could not by reason of the provisions of section 4 of the act, supra, be sold to satisfy claims against the deceased allottee arising prior to the removal of restrictions.

In addition to the land upon which restrictions had been removed, there was certain personal property belonging to the deceased at the time of his death which was likewise subject to administration, and at the time of final distribution there was in the hands of the administrator a balance of $207 in cash, subject to distribution. We, therefore, conclude that the unrestricted land and personal property were subject to the probate jurisdiction of the county court; that a distribution of that property was made in the manner provided by law; and that the determination of heirship made incidental to that distribution was conclusive against the world as to such property by virtue of the jurisdiction in rem of the county court over the subject-matter involved.

What we have previously said relates to the probate jurisdiction of the county court and would completely dispose of this case if it were not for the 80 acres of restricted land belonging to Taylor Hardridge at time of his death. However, the fact that the county court had jurisdiction in rem over a portion of the property of the deceased and incidental to distribution could determine heirship, is an important factor in determining the effect of that decree as to the restricted lands of the deceased allottee.

The plaintiff in this case attaches considerable importance to the case of Wolf v. Gills, supra, in which it was held in substance that that decree of the county court entered in 1911, determining the heirship of Charlotte Wolf, a deceased full-blood Chickasaw Indian having full-blood heirs, was not conclusive as to the heirs entitled to inherit such lands for the reason that ' restricted lands of full-blood Indians do not become assets in the hands of an administrator and are not subject to distribution as assets of the estate of such Indian."

The case at bar is distinguishable from that case in that Charlotte Wolf left no estate subject to administration, whereas in the instant case Taylor Hardridge left an estate consisting of unrestricted lands and personal property which was **subject to administration and distribution.**

Notwithstanding this distinction, the cited case would be strongly persuasive in this case if it were not for another and more important distinction. The decree of heirship in the Wolf Case was entered in 1911. The decree of heirship in the instant case was entered in 1921. In the interim our National Congress had passed the Act of June 14, 1918 (40 Stats. at L. 606) 25 USCA sec. 375, authorizing probate courts of Oklahoma to determine heirship of deceased citizen allottees of the Five Civilized Tribes having restricted heirs. That act provided:

"Determination of Heirship. * * * A determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have **heretofore died,** leaving restricted heirs, by the probate court of the state of Oklahoma having **jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said state for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question;** Provided, that an appeal may be taken in the manner and to the court provided by law, in cases of appeal in probate matters generally: Provided, further, that where the time limited by the laws of said state for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exists no lawful ground for the institution of administration proceedings in said courts, a petition may be filed therein having for its object a determination of such heirship and the case shall proceed in all respects as if administration proceedings upon other proper grounds had been regularly begun, but this proviso shall not be construed to reopen the question of the determination of an heirship already ascertained by competent legal authority under existing laws: Provided, further, that said petition shall be verified, and in all cases arising hereunder service by publication may be had on all unknown heirs,

the service to be in accordance with the method of serving nonresident defendants in civil suits in the district courts of said state; and if any person so served by publication does not appear and move to be heard within six months from the date of the final order, he shall be concluded equally with parties personally served or voluntarily appearing."

At the time this act was passed sections 1359-1362, C. O. S. 1921, were in force and effect, and prescribed the manner in which heirship should be determined in closing up the estate of deceased persons. The procedure outlined by these sections was followed in the case at bar. It is the claim of the defendants that by virtue of the act of Congress, the subsequent decree of county court determining heirship constituted a conclusive adjudication of who were the heirs of the deceased allottee.

The plaintiff, on the other hand, urges that the only manner in which the county court could determine the heirship of restricted Indian heirs to restricted Indian land was in accordance with the procedure outlined in sections 1391-1396, O. S. 1931. An understanding of this question may be had from a brief review of those sections and the history thereof.

At the time the Act of 1918, supra, was passed by Congress, there were three methods whereby the heirship of a decedent might be determined in connection with a probate proceeding prescribed by the statutes of this state: (1) By virtue of sections 6458-6462, inclusive, R. L. 1910 (1353-1357, O. S. 1931), where letters testamentary or of administration had been issued and four months had elapsed, an heir, devisee or legatee might present a petition to the county court to obtain the legacy or share of the estate to which he was entitled. (2) By sections 6463 to 6466, R. L. 1910 (1358-1361, O. S. 1931), the county court was authorized to distribute the estate on final settlement of the accounts of the executor or administrator or at any time thereafter, and as an incident thereto was authorized to make a determination of heirship. (3) By section 6488, R. L. 1910 (repealed, chap. 25, S. L. 1919) county courts were authorized to determine heirship in connection with administration of estates on petition or application of any one claiming a right to share in the distribution of the estate, at any time after the expiration of one year after the issuing of letters testamentary or of administration.

All of these authorized methods of procedure contemplated a determination of heirship only in cases where the county court was exercising its probate jurisdiction. They were adequate to enable the county court to proceed in cases where administration proceedings were proper. By the Act of 1918, supra, Congress made the determination of heirship by the county court having jurisdiction to settle the estate of a deceased citizen allottee of the Five Civilized Tribes conclusive when conducted in the manner provided by the laws of the state for the determination of heirship in closing up estates. It also provided for a determination of heirship of such deceased allottee by the county court in cases where administration proceedings were not proper. It at once became apparent that under the latter provisions of the act of Congress, many cases might arise in which the deceased left no property which would constitute assets of the estate in which the probate court would have no jurisdiction to make a distribution of property in connection with its probate jurisdiction, and in order to enable the probate court to act in such cases in conformity with the congressional act, our state Legislature enacted chapter 25, S. L. 1919 (sections 1391-1396, O. S. 1931, supra). This enactment repealed section 6488, R. L. 1910. However, it expressly provided "The method herein provided * * * shall not be exclusive, but shall be in addition to method already provided by law." (Sec. 1396, O. S. 1931.)

In accordance with this provision this court has held that the method of determining heirship provided by sections 1384-1389 is not exclusive, but, on the contrary, is cumulative, and that heirships may still be properly and conclusively determined in the manner provided by sections 1358-1361, O. S. 1931. Hogan v. Superior Court of Oklahoma County, supra. In that case this court, speaking through Mr. Justice Riley, said:

"A decree of distribution made by the county court in probate having jurisdiction of the settlement of an estate on a hearing as provided by sections 1359-1362, C. O. S. 1921, distributing to the heirs at law their respective shares of the estate of the deceased, is conclusive as to the rights of the parties interested in the estate, unless reversed or modified on appeal; such a decree is not subject to collateral attack. * * *"

Thus, the method of determining heirships provided by sections 1359, et seq., supra, is available in a case in which the county court has jurisdiction to distribute property on settlement of final account; as we have already determined the case at bar is such a case and the method suggested was pursued.

What, then, is the effect of such determination? The answer to this question is found in the act of Congress itself. Referring to such determination, it is therein said that the same "shall be conclusive on said question", referring to the "question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes."

The power and authority to decide who are the heirs of a deceased necessarily carries with it the power to determine who are not heirs.

It must be presumed that our National Congress, in making a determination of heirship, "conducted in the manner prescribed by the laws of said state for the determination of heirship in closing up the estates of deceased persons," conclusive, approved as sufficient the notice prescribed by statute in such cases.

Although the administration proceedings in the case were pending at the time the act of Congress was passed, the power of the county court to determine heirship as an incident to distribution was not invoked until the final account of the administration embodying a request for distribution was filed in 1921. Thus the proceedings by which the heirship was determined in this case were had after the additional effect of such a determination on the restricted lands of the deceased had been established by congressional enactment.

It is also suggested in this case by the plaintiff that the lands in question also constituted a probate homestead under our state law. We deem it unnecessary to consider this question other than to observe that the plaintiff claims to be a grandchild. The probate homestead recognized by the laws of this state is for the benefit of the widow and minor children of the deceased. Section 1224, C. O. S. 1921. Its benefit cannot be claimed by a grandchild or alleged grandchild. Manning v. Dosher, 167 Okla. 368, 29 P. (2d) 966. The plaintiff is therefore not in a position to urge such a contention.

For the foregoing reasons, we hold that the determination of heirship as made by the county court of Okmulgee county in 1921 in connection with the administration of the estate of Taylor Hardridge was conclusive, both as to the restricted and unrestricted portions of his allotment. The judgment of the trial court being in accord with this decision, the same will be affirmed.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS and OSBORN, JJ., concur.