## In re THOMPSON'S ESTATE.
## ST. JOHN et al. v. THOMPSON et al.

No. 26906. Opinion Jan. 19, 1937.

Rehearing Denied March 2, 1937.

H. P. White, for plaintiff in error.

C. S. Macdonald and F. W. Files, for defendants in error.

GIBSON, J. This action originated in the county court of Osage county, wherein Floyd Thompson, by his guardian, sought determination of the heirs of Mary Wheeler Thompson, a deceased full-blood Osage Indian.

The defendant in error, Floyd Thompson, and plaintiff in error, Pierce St. John, Jr., a minor, are the real parties in interest and will be referred to herein as plaintiff and defendant, respectively.

Deceased was a resident of Osage county at the time of her death in the early part of the year 1935, and the county court of that county, upon petition duly filed, assumed jurisdiction of the settlement of her estate and appointed an administrator and issued letters on the 15th day of February of that year.

On April 22, 1935, the plaintiff, asserting himself to be a half-blood Kaw Indian and the legal husband of deceased, filed his petition in the same cause seeking a determination of heirs. The heirship proceeding was instituted under authority of sections 1391-1396, O. S. 1931, and not as an incident to the distribution of said estate on final settlement as provided in section 1358, O. S. 1931. The county court entered its order adjudging the plaintiff, as surviving husband, and defendant, as surviving child, to be the only heirs of the deceased. The district court on appeal affirmed the judgment of the county court, and defendant has appealed to this court.

The first and paramount question presented by the assignments involves the county court's jurisdiction of this proceeding, and this brings into question the constitutionality of section 1391, O. S. 1931, or its applicability to the proceedings here reviewed.

The material portion of section 1391, so far as the same applies to this case, reads as follows:

"The county court having jurisdiction to settle the estate of any deceased person is hereby granted original jurisdiction to hear and determine the question (sic) of fact as to the heirship of such person, and a determination of such fact by said court shall be conclusive evidence of said question in all the courts of this state. Provided, that appeals may be taken from said county courts within the time and in the manner provided by law as in other probate matters. If no appeal is taken the judgment of the county court shall be final, and in all cases appealed from the county court when a final determination thereof is had, same shall be a final determination of such fact of heirship."

The remaining portion of that section provides for the determination of heirs by the county court in cases where the time limited by law for the institution of administration proceedings has expired without the proceedings having been instituted, and in cases where there exists no lawful ground for the institution of such proceedings, and does not apply here. In the instant case administration proceedings had been commenced and were pending, and the present proceeding to determine heirs arose therefrom. Although it is asserted by defendant in error that the deceased possessed no property that would constitute assets in the hands of an administrator, that character of assets is not necessary to the institution of such proceedings, and the absence thereof does not deprive the court of jurisdiction. Wolf v. Gills, 96 Okla. 6, 219 P. 350. The third paragraph of the syllabus of that case reads as follows:

"Under section 1088, Comp. Stat. 1921, jurisdiction of the estate of a deceased citizen is based, not upon the existence of assets, but upon domicile in the county, and it is therefore not necessary that there should be assets of the decedent in order for an administrator to be appointed. While it would be an abuse of discretion for a county court to appoint an administrator for a deceased resident of the county where there is no estate or other statutory ground for the appointment, such appointment would not be void."

Therefore the administration proceedings were properly instituted in Osage county, and the county court obtained jurisdiction thereof subject, of course, to such limitations and restrictions in exercising its jurisdiction as are placed thereon by the Constitution and laws of Oklahoma, and the acts of Congress relating to Osage affairs.

The fact that the deceased was a full-blood Osage Indian, owning restricted and debt-exempt property, creates no doubt as to the jurisdiction of the county court of Osage county as a court of probate over the estate of the deceased, because Congress, by the Act of April 18, 1912 (37 Stat. 86), subjected such estates to the jurisdiction of the county courts of Oklahoma, as follows: "That the property of deceased * * * allottees of the Osage Tribe * * * shall, in probate matters, be subject to the jurisdiction of the county courts of the state of Oklahoma."

In Mudd v. Perry, 25 Fed. (2d) 85, when considering the foregoing Act of Congress of April 18, 1912, the Circuit Court of Appeals said:

"This was a devolution by the Congress of judicial authority upon the county courts of Oklahoma to determine judicially, among other things, who were rightful claimants to the estate of deceased allottees of the Osage Indian Tribe. It was more than a mere selection of the county court for the performance of a ministerial or executive duty. It involved, as Congress must have intended, a judicial inquiry. The county courts of Oklahoma were not designated as agents or final arbiters in such matters, but it was provided that such estates 'shall, in probate matters, be subject to the jurisdiction of the county courts.'"

In Wah-tsa-e-o-she v. Webster, 69 Okla. 257, 172 P. 78, when construing this same act, we said that it "gives the county courts of Oklahoma jurisdiction over the property of deceased Indians. In investing this jurisdiction in the county court, Congress could not have had any reason to have made any distinction between this class of cases and other cases."

In Wright v. Lamb, 108 Okla. 16, 232 P. 373, we said that by the Act of 1912 "the United States merely relinquished its jurisdiction over these probate matters. The Osages being residents of the state of Oklahoma and with property located therein, do thereupon, naturally, come under the laws of the state of Oklahoma and the jurisdiction of its probate courts." See, also, Shimonex v. Tillman, 150 Okla. 177, 1 P. (2d) 154.

In view of the foregoing decisions the county courts, under the Act of 1912, are left free to exercise the same jurisdiction and powers over the estates of deceased Osages as it may in the administration of the estates of the ordinary citizen under the Constitution and laws of this state. See, also, Mudd v. Perry, 108 Okla. 168, 235 P. 479.

Under the Act of 1912 the county court in the administration of estates of deceased Osages acts judicially as a court of probate and not as a federal administrative agency. Compare certain acts of Congress concerning the estates of citizens of the Five Civilized Tribes and cases construing said acts. Section 9, Act of Congress, May 27, 1908, relating to approval of deeds; Malone v. Wamsley, 80 Okla. 181, 195 P. 484; Haddock v. Johnson, 80 Okla. 250, 194 P. 1077; Snell v. Canard, 95 Okla. 145, 218 P. 813; Parker v. Richard, 250 U. S. 235, 39 S. C. 442, 63 L. Ed. 954; Act of Congress June 14, 1918, relating to determination of heirs; State v. Huser, 76 Okla. 130, 141, 184 P. 113, 123; In Re Fulsom's Estate, 141 Okla. 300, 285 P. 13.

The probate jurisdiction of the county courts extends to the sale, settlement, partition and distribution of the estates of deceased persons (section 13, art. 7, Constitution); and it has long been recognized that as an incident to that jurisdiction the county court may, upon final settlement and distribution, determine the heirs to whom the estate shall go, as provided in sections 1358-1361, O. S. 1931. That power extends at least to all assets subject to payment of the debts of the deceased. Teague v. Smith, 85 Okla. 12, 204 P. 439; Hilton v. Coyne, 103 Okla. 279, 229 P. 630; Hogan v. Superior Court, 122 Okla. 295, 254 P. 966; Hutson v. McConnell, 139 Okla. 240, 281 P. 760; Hardridge v. Hardridge, 168 Okla. 7, 31 P. (2d) 597.

By the Act of 1919, section 1391, supra, and sections 1392, 1393, O. S. 1931, the Legislature has attempted to provide an additional method or proceeding for the determination of heirs in all cases where the county court has "jurisdiction to settle the estate of any deceased person." We recognize in that portion of the 1919 Act here applicable no attempt to enlarge the scope of the powers of the county court as defined in the Constitution and authorized in section 1358, supra, namely, the power to determine the heirs of a deceased person as an incident to the final settlement of the estate. The remedy authorized by that portion of section 1391, supra, here applicable, and the procedure prescribed by sections 1392, 1393, are merely cumulative. Section 1396, O. S. 1931.

Section 13, art. 7, Constitution, provides as follows:

"The county court shall have the general jurisdiction of a probate court. It shall * * * grant letters testamentary and of administration, * * * transact all business appertaining to the estates of deceased persons, * * * including the sale, settlement, partition, and distribution of the estates thereof."

In order to exercise its complete powers and duties in settling and distributing an estate as defined in the foregoing section of the Constitution, the county court must determine the question of fact as to heirship. If proceedings are had and conducted and jurisdiction of the parties is obtained in due compliance with the statutes in question, either section 1358, O. S. 1931, or the Act of 1919, the determination of heirs constitutes merely an act preliminary or pursuant to the ultimate duty to settle the estate and can amount to nothing more than a mere incident to that duty. That is to say, the settlement of the estate is the principal or ultimate purpose, and the determination of the question of heirship is directly and immediately pertinent thereto.

Whether that be accomplished prior or subsequent to the accomplishment of the main purpose, it yet remains an incident thereto, and the time is not material.

We hold, therefore, that under the provisions of sections 12, 13, art. 7, Constitution, and sections 1391-1396, O. S. 1931, the county court having jurisdiction to settle the estate of any deceased person may, during the course of administration proceedings, determine the heirs of the deceased where the court's jurisdiction is duly invoked for that purpose as provided in said statutes.

It is urged that the property described in the petition in the instant case is restricted and does not constitute assets of the estate subject to distribution, and therefore the decree of the county court determining heirs is a nullity. Here the defendant relies on the decisions of this court in Wolf v. Gills, supra, and Cowokochee v. Chapman, 90 Okla. 121, 215 P. 759. Those decisions have no application to the question of administration of the estates of ordinary citizens, including Osage Indians. There the court was dealing with the restricted allotments of deceased citizens of the Five Civilized Tribes. When those causes arose, Congress had not authorized the county courts to determine the heirs to whom such lands should descend, and had not subjected that character of estates to the probate jurisdiction of the county courts. Subsequent to the Act of Congress of June 14, 1918, giving the probate court having jurisdiction to settle the estate of such Indians authority to determine their heirs in the manner provided by the laws of Oklahoma for the determination of heirship in closing the estates of deceased persons, the authority of the county court to determine the heirs to such restricted estate when acting under its probate jurisdiction has been recognized. Hardridge v. Hardridge, supra.

Here the county court of Osage county had acquired jurisdiction of the administration of the estate of the deceased. In such case all the property of the deceased is subject to the control of the county court (section 1615, O. S. 1931); and it is empowered to order and regulate, all distribution of the property and estate of deceased. Section 1067, O. S. 1931. As was said in Oil Well Supply Co. v. Cremin, 143 Okla. 57, 287 P. 414, "that jurisdiction and power are required to be exercised, and the rights of an heir to the property of an intestate are determined by the decree of that court in the administration proceedings." This is strongly indicative of a disposition on the part of this court to consider these sections of the statute as placing all the property of a decedent under control of the county court regardless of the fact that a portion of such property may not constitute assets for the payment of debts. This is not an attempted enlargement of the recognized constitutional probate powers of the court. While property of the estate not constituting assets for the payment of debts may not be disposed of by order of court during the process of administration, such property remains subject to the decision of the court as to whom it shall go upon final conclusion of the administration proceedings.

In our conclusion that the county court may render a valid decree of heirship as to that portion of the estate not constituting assets for payment of debts we are fully supported by the decision in Ward v. Cook, 152 Okla. 234, 3 P. (2d) 728, wherein a decree of heirship entered as incident to final settlement was held conclusive as to the interests of all the heirs in all the property of deceased, including the probate homestead, which has long been considered as property not subject to the payment of debts.

Here the record is silent as to existence of assets subject to debts. In rendering the decree the court was functioning as a court of general jurisdiction. Sections 12, 13, art. 7, Const. In such case the court is presumed to have found all necessary jurisdictional facts to exist before rendering its judgment. Wolf v. Gills, supra. Here we must presume that such assets existed and that the court rendered its decree as incident to its duty to settle the administration proceedings.

Defendant next contends that the plaintiff, Floyd Thompson, not being of Osage Indian blood, is precluded from inheriting any of the restricted estate of his alleged wife, Mary Wheeler Thompson. This contention is based upon the provisions of section 7 of the Act of Congress of February 27, 1925, which reads as follows:

"Sec. 7. Hereafter none but heirs of Indian blood shall inherit from those who are of one-half or more Indian blood of the Osage Tribe of Indians any right, title or interest to any restricted lands, moneys, or mineral interests of the Osage Tribe: Provided, That this section shall not apply to spouses under existing marriages. Approved, February 27, 1925."

Here the word "heirs" is used in the sense usually accorded it in American law and as meaning those persons upon whom the devolution of the property of an intestate is cast by operation of law. The act is not ambiguous. Congress has said that such persons, in order to inherit the restricted property of those who are of half or more Indian blood of the Osage Tribe, shall themselves be of Indian blood. Why Congress did not restrict inheritance to those of Osage Indian blood we do not know. The requirement that the heirs be of Indian blood seemed sufficient to Congress for the proper safeguard of the members of the Osage Tribe. The meaning of the provision is clear. Where a statute is not ambiguous and clearly reveals the intent of the lawmaking body, it is not within the province of the courts to insert or remove words from the context thereof. In order for such inheritance to be confined to heirs of Osage Indian blood we would be compelled to insert the word "Osage" before the word "Indian" in the first line of the section. Such is not properly within the province of the court. We are advised that our interpretation of this act accords with the interpretation placed thereon by the Department of the Interior, and by the agency administering the affairs of the Osage Tribe of Indians.

Defendant's next contention is that Floyd Thompson failed to establish that he was of Indian blood, and that the court erred in finding that said Thompson was of the blood of the Kaw Tribe of Indians.

The district court specifically found that Thompson was a half-blood Kaw Indian. Such finding was not against the clear weight of the evidence. The judgment and finding in that regard will therefore not be disturbed here.

It is next contended that Floyd Thompson was not legally divorced from a former wife when he married Mary Wheeler Thompson, the deceased, and that he was therefore not the legal husband of deceased.

Audrey Thompson, former wife of plaintiff, filed a petition for divorce against him in the district court of Osage county on September 23, 1927. On November 12, 1927, there was filed on behalf of Thompson the following appearance and waiver:

"Comes now Floyd Thompson, defendant above named, and waives the issuance and service of summons herein, enters his general appearance in the cause and consents that the same may be set down for trial at any time.

"Floyd Thompson, Defendant."

No praecipe for summons was filed and no summons issued. Decree of divorce was entered November 12, 1927, the day the waiver was filed.

A civil action in a court of record is commenced by filing with the clerk of the court a petition and causing a summons to be issued thereon. Section 164, O. S. 1931. An acknowledgment on the back of the summons or the voluntary appearance of a defendant is equivalent to service of summons. Section 175, O. S. 1931.

Defendant says the foregoing waiver was equivalent to issuance and service of summons and for that reason the action for divorce was not actually commenced until November 12, 1927, the day of the decree. It is here contended that the said Floyd Thompson, defendant in that action, was entitled to 20 days thereafter in which to answer unless the time was also specifically waived, which, it is said, was not done. It is argued that under these circumstances the court was without jurisdiction to render default judgment against Floyd Thompson prior to the expiration of 20 days after his written waiver was filed.

The divorce action had been properly commenced and was pending when the decree was entered. If the defendant in the case was actually in default, the decree is valid. We hold that he was in default and that the cause was properly before the court for trial and determination. His agreement that the cause "may be set down for trial at any time," in the absence of reservation of the right to plead further, is indicative of his intention not to file further pleadings and constitutes a consent on his part that the merits of the plaintiff's complaint may be heard and disposed of at any time without further notice. In the face of Thompson's waiver and agreement that trial be had at any time, further delay of trial would not be justified. He had waived any right to further delay and his right to plead. When default judgment was taken against him the cause stood exactly as if the time to answer had expired. Default judgment may be taken at any time after the expiration of the time for answer. Boles v. McLaren, 152 Okla. 265, 4 P. (2d) 106.

In Wooden v. Wooden, 113 Okla. 81, 239 P. 231, where the defendant in a divorce action filed a waiver of summons and consent "that said cause may be tried forthwith," this court held that the waiver and consent, although filed the day the decree was granted, constituted a voluntary appearance on the part of the defendant. There is no material difference in the effect of a consent that trial be had forthwith and a consent that trial be had at any time. Voluntary appearance with consent to trial at any time, in the absence of a request for further delay, is sufficient to give the court jurisdiction to render default judgment at any time on failure of the defendant to appear and abide the pleasure of the court.

The judgment of the trial court is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, WELCH, PHELPS, CORN, and HURST, JJ., concur. RILEY, J., absent.