## UNITED STATES v. DRUMMOND.

### No. 2895.

Circuit Court of Appeals, Tenth Circuit.

Aug. 1, 1944.

Rehearing Denied Aug. 28, 1944.

Writ of Certiorari Granted Nov. 13, 1944.

See 65 S.Ct. 132.

Norman MacDonald, Atty., Dept. of Justice, of Washington, D.C. (Norman M. Littell, Asst. Atty. Gen., and Whit Y. Mauzy, U.S. Atty., of Tulsa, Okl., on the brief), for appellant.

Chas. R. Gray, of Pawhuska, Okl. (W. N. Palmer, of Pawhuska, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

George Pitts and Mamie Pitts, husband and wife, were full blood Indian members of the Osage Tribe of Indians. No certificate of competency was ever issued to Mamie Pitts. Such a certificate was issued to George Pitts, July 11, 1910, and remained in full force until June 24, 1938, when it was revoked by the Secretary of the Interior. Mamie Pitts died intestate May 24, 1937, seized and possessed of real estate which included her allotment. George Pitts was appointed administrator of her estate by the proper county court. On September 9, 1938, the county court entered an order adjudging George Pitts to be her sole heir at law, and directed distribution of the estate to him. On July 12, 1937, George Pitts gave Fred G. Drummond a note for $2,500, and secured it with a mortgage on the real estate which he inherited from his wife. His certificate of competency was revoked shortly thereafter. The note was not paid, and Drummond instituted foreclosure proceedings on the mortgage in the state court. The government was not a party to that suit. Pitts was represented by an attorney of his own choosing. His employment was approved by the Secretary of the Interior, who also approved the expenses of that litigation, including attorneys' fees. The Secretary also approved an appeal to the Supreme Court of the State of Oklahoma, and an application for certiorari to the Supreme Court of the United States. The attorney in that litigation was, however, not authorized to appear for or represent the United States. The Supreme Court of Oklahoma upheld the validity of the mortgage and of the foreclosure proceedings. See Pitts v. Drummond, 189 Okl. 574, 118 P.2d 244.

After the judgment of foreclosure in the state court became final, the United States government in its own behalf and in behalf of George Pitts, instituted this action to cancel the sheriff's deed and to quiet title. The government has appealed from a judgment denying the relief prayed for. It is the government's contention that the mortgage to Drummond was void under Section 7 of the Act of April 18, 1912, 37 Stat. 88, because it was executed prior to the adjudication of heirship and order directing the distribution of the estate of Mamie Pitts to her heir, George Pitts, and that the mortgage was also void under Section 3 of the Act of February 27, 1925, 43 Stat. 1010, 25 U.S.C.A. § 331 note, because it was executed without the approval of the Secretary of the Interior.

The question in this case is identical with the one that was decided by the Supreme Court of Oklahoma in Pitts v. Drummond, supra. The Oklahoma Supreme Court in a large measure followed the decision by the United States District Court for the Northern District of Oklahoma in United States v. Mullendore, 30 F.Supp. 13. In the Mullendore case, the husband of the deceased Osage allottee was not a member of the Osage Tribe. Judge Kennamer held that the Act of April 18, 1912, applied to Osage allottees alone and to their Osage Indian heirs, but that it did not manifest an intent to protect non-members of the tribe. He held that where the heir was a non-member of the tribe, his right to alienate was controlled by Section 6 of the Act of 1912, and that under it, all restrictions were removed as to non-Osage Indian heirs. He further held that if Section 7 did apply, the heir in that case had the right to alienate the inherited land, because at the time the mortgage was given, the land had actually been turned over to him, although no adjudication of heirship had been made.

The Oklahoma Supreme Court, as an additional reason for its decision, held that, assuming that Section 7 operated to reimpose restrictions upon the alienation of lands inherited by an Osage Indian having a certificate of competency until the final distribution of the estate by the county court, it did not apply in this case, because since the deceased was a full blood restricted Osage Indian, her lands were not subject to payment of debts and therefore were not subject to the control or jurisdiction of the probate court and that therefore there was no tribunal or person with power or authority to turn these lands over to the heir. This reasoning leads to the incongruous result that Congress intended to throw greater protection around unrestricted land inherited by an Osage Indian than around restricted land inherited by the same Indian.

Section 2(7) of the Osage Allotment Act of June 28, 1906, 34 Stat. 539, authorized the Secretary of the Interior to issue certificates of competency to such Osage Indian allottees as he thought were competent to manage their own business affairs. A certificate of competency had the effect of removing restrictions from all allotted property except the homestead. It did not, however, remove restrictions from inherited lands. Under the Act of 1906, the inherited lands of an Indian having a certificate of competency became subject to all debts contracted prior to the issuance of such certificate.

■ Section 3 of the Act of 1912 conferred jurisdiction upon the Oklahoma courts having probate jurisdiction to administer estates of Osage Indian allottees and to determine heirship in such estates. Section 6 provided for partition by heirs of lands inherited from allottees and removed all restrictions against alienation of inherited lands of Osage Indians who had a certificate of competency. Section 7 protected the inherited property of Indians having a certificate of competency from debts contracted prior to the receipt of the certificate of competency and against debts contracted prior to the time such lands were turned over to the Indian heir.

Section 6, read by itself, no doubt removes all restrictions against alienation of inherited lands by Osage Indians having a certificate of competency, but the anwser to the problem cannot be found by considering Section 6 alone. Section 7 is also a part of the Act and must be considered together with Section 6. Congress had some purpose in mind when it included Section 7 in the Act, and these two sections should be so construed, if possible, as to give effect to both.

■ It is our conclusion that Section 7 reimposed limited restrictions on such property as was freed therefrom by the issuance of a certificate of competency under Section 6, to the extent that such property was protected against debts contracted prior to the issuance of the certificate, and also against debts contracted between the time

of inheritance and the time the property was turned over to the heir.

In our opinion, the decision in this case does not depend upon whether lands of restricted Osage Indians are subject to the jurisdiction of the county court of Oklahoma, in the sense that it may administer such lands and subject them to the payment of debts. The question is, what did Congress intend when it passed Section 3 of the Act of 1912, providing that the property of Osage Indians should in probate matters be subject to the jurisdiction of the courts of Oklahoma? Section 3 evidences a Congressional intent to select the courts of Oklahoma having probate jurisdiction as a tribunal for the purpose of administering estates of Osage Indians and determining heirship.

Title 84 O.S.A. § 251, confers jurisdiction upon the county courts to settle estates of deceased persons, to hear and determine questions of fact as to heirship of such persons, and provides that such determination shall be conclusive in the absence of appeal. Title 58 O.S.A. § 251 provides that the executor or administrator must take into his possession the entire estate of the decedent, except the homestead and personal property not assests. Title 58 O.S.A. § 291 provides for turning over the real estate of the estate.

The Oklahoma Supreme Court has held that the executor or administrator was entitled to the possession of all real and personal property, with certain exceptions, until the estate is settled and delivered to the heirs, In re Gentry's Estate, 158 Okl. 196, 13 P.2d 156; that the property of one who dies intestate passes to the heirs subject to the control of the county court and to the possession of the administrator, White House Lumber Co. v. Howard, 142 Okl. 163, 286 P. 327; Davis v. Morgan, 186 Okl. 30, 95 P.2d 856.

Oklahoma has uniformly held that jurisdiction of the estate of a deceased person is based upon residence and not upon the existence of assets, and that the existence of assets was not necessary to the appointment of an administrator.[1]

The county courts of Oklahoma have full and complete jurisdiction over the estates of deceased persons, including the power to marshal assets for the payment of debts, determine heirship, the right to receive real and personal property and deliver the same to those who have been decreed to be the heirs and entitled thereto.

Congress no doubt had in mind the scope and breadth of the probate jurisdiction of Oklahoma courts when it enacted Section 3 of the Act of 1912. It recognized the necessity of setting up machinery to determine heirship of Osage Indian allottees so that property could be delivered to those rightfully entitled to receive it. Judge Reeves interpreted the Act of 1912 as "a devolution by the Congress of judicial authority upon the county courts of Oklahoma to determine judicially, among other things, who were rightful claimants to the estate of deceased allottees of the Osage Indian Tribe. It was more than a mere selection of the county court for the performance of a ministerial or executive duty. It involved, as Congress must have intended, a judicial inquiry." Mudd v. Perry, 8 Cir., 25 F.2d 85, 87.

It is our conclusion that by Section 3 of the Act of April 18, 1912, Congress subjected the estates of all Osage Indian allottees, whether the same consisted of restricted or unrestricted lands, to the jurisdiction of the county courts of Oklahoma for the purpose of administration. Adjudication of heirship is a step in the administration of an estate. The county court had jurisdiction of Mamie Pitts' estate for the purpose of adjudicating heirship. It took jurisdiction of the estate, adjudicated the heirship, and entered an order directing the delivery of the estate to Pitts.

It is true that the title to real estate vests in the heirs upon the death of the testator, but it is not absolute until heirship is determined and an order of distribution is made. Where real estate of an Osage allottee is unrestricted, the heir, while being the owner thereof, is not entitled to its possession until all debts are satisfied and an order is entered directing the distribution of the property to him. Where the property is restricted, he is not entitled to receive it until his title has been legally adjudicated by an order of the court determining heirship and directing its distribution to him.

The debt for which the Drummond

---

[1] Wolf v. Gills, 96 Okl. 6, 219 P. 350; Hardridge v. Hardridge, 168 Okl. 7, 31 P.2d 597; Stock v. Sentinel Rural and Long Distance Tel. Co., 184 Okl. 380, 87 P.2d 656; Wolfe v. Graham, 185 Okl. 318, 90 P.2d 1067; Griffin v. Hannan, 185 Okl. 433, 93 P.2d 1078.

mortgage was given was contracted prior to the order adjudicating heirship and directing the distribution of the estate to Pitts. It follows, from what has been said, that the inherited real estate was not subject to the payment of this debt and that the mortgage given to secure its payment was void.

The conclusion we have reached makes unnecessary a consideration of the government's contention that the mortgage was void under Section 3 of the Act of February 27, 1925, because it was executed without the approval of the Secretary of the Interior.

Reversed and remanded, with directions to proceed in conformity with the views expressed herein.