**MARCH et al. v. PETER et al.**

No. 23729. Oct. 27, 1936.

Rehearing Denied Feb. 9, 1937.

Geo. E. Rider and Earl A. Brown, for plaintiffs in error.

Anglin & Stevenson, Vernon Roberts, and J. W. Rodgers, for defendants in error.

BUSBY, J. This ·action was commenced in the district court of Marshall county on July 13, 1929, by Lela Peter, now Peoples, Noel Peter, Enos Peter, Jesse Peter, and Raymond Peter, a minor, by his guardian and next friend, C. F. Peoples, as plaintiffs, against Margaret March, Mrs. Lester March Carlton, Clyde Jekell March, Mrs. Mona Sweeden, Marguerite March, Lucile March, George Sterling March, Jr., Kathleen March, John Abe March, heirs of George S. March, deceased, and Margaret W. March, ·administratrix of the estate of George S. March, deceased, Claud Chesnut, Lula Chesnut, Lottie Mitchell, Curtis Chesnut, Melvin Chesnut, Lucile Chesnut, heirs of C. C. Chesnut, deceased, and Lula Chesnut, administratrix of the estate of C. C. Chesnut, deceased, W. J. Hoggard, O. G. Rollins, Don Welch, and H. M. Rice. The plaintiffs in their petition sought to recover the possession of and quiet title to certain land situated in Marshall county. They also sought the cancellation of certain instruments of conveyance through which the defendants claimed title. Issues were joined by appropriate pleadings, and the cause was tried to the court on the 14th day of November, 1930. It was taken under advisement until the 18th day of May, 1931, at which time judgment was rendered granting in part the relief sought.

The existing situation and the reasons for the decision are set forth in the journal entry with such clarity that we quote at length from the same. Omitting the preliminary recitations, the judgment reads:

"And now on this 18th day of Mat. (sic) 1931, the court after hearing testimony of witnesses, duly sworn and examined in open court on November 15, 1930, statement of counsel and being fully advised in the premises finds that Stephens Peter was full-blood Choctaw Indian, duly enrolled as such opposite roll No. 691, and that he received as his portion of the land of the Choctaw Nation the following described property in Marshall county, Okla., to wit:

"The west half (W.½) and the west half of the southwest quarter of the northeast quarter (W.½ S.W.¼ N.E.¼) of section 22, township 7 south, range 5 east of the Indian Meridian.

"The court further finds that there was allotted to the said Stephen Peter as his homestead allotment, the following described land, to wit:

208

"The southwest quarter (S.W.¼) of section 22, township 7 south, range 5 east of the Indian Meridian, in Marshall county, Okla.

"The court further finds that the said Stephen Peter died intestate while domiciled in Marshall county, Okla., on or about the 13th day of April, 1918, seized and possessed of the above-described land, and leaving him surviving his widow, Lela Peter, and four (4) children, namely, Noel, Enos, Jesse and Raymond, and each of said heirs inherited an undivided one-fifth (1/5) interest in said property.

"The court further finds that the said Raymond Peter was born subsequent to March 4, 1906, and by reason of this fact said homestead allotment was inalienable under the Act of Congress restricting homesteads until April 26, 1931, and that Raymond Peter was entitled to possession of said homestead during this time.

"The court further finds that subsequent to the filing of this suit Jesse Peter died intestate, unmarried and without issue, leaving him surviving as his sole and only heirs at law his three (3) brothers, Noel, Enos and Raymond, who inherited his estate.

"The court further finds that on the 22nd day of April, 1918, Lela Peter, by warranty deed, attempted to convey her interest in the allotment of Stephen Peter, deceased, to George S. March; that on the 11th day of October, 1918, Noel Peter and his wife attempted to convey his interest in the allotment of Stephen Peter, deceased, to C. C. Chesnut; that on the 25th day of November, 1919, Enos Peter, by deed, attempted to convey his interest in said allotment to Claud Chesnut and W. J. Hoggard; that Jesse Peter, on the 9th day of December, 1922, attempted to convey his interest in said allotment to H. M. Rice.

"The court further finds that said deeds from each of said heirs in so far as they attempt to convey the homestead allotment of said deceased, to wit: the southwest quarter of section 22, township 7 south, range 5 east of I. M., are void and of no force and effect for the reason that said allotment was restricted until April 26, 1931.

"The court further finds that said homestead allotment is owned by the following heirs of Stephen Peter, deceased, in the following proportions, to wit:

"Lela Peter, an undivided 3/15ths interest;

"Noel Peter, an undivided 4/15ths interest;

"Enos Peter, an undivided 4/15ths interest:

"Raymond Peter, an undivided 4/15ths interest;

—subject to the use and benefit of the said Raymond Peter until April 26th, 1931.

"The court further finds that Raymond Peter was the owner of an undivided one-fifth (1/5) interest in the surplus allotment of Stephen Peter, deceased, to wit:

"The northwest quarter, and the west half of the southwest quarter of the north east quarter of section 22, township 7 south, range 5 east of I. M.,

—and that said plaintiff is entitled to have said property quieted in him.

It is, therefore, ordered, adjudged and decreed by the court that the plaintiffs be and they are hereby decreed to be the owners of the southwest quarter of section 22, township 7 south, range 5 east of I. M., in the following proportions, to wit:

"Lela Peter, an undivided 3/15ths interest;

"Noel Peter, an undivided 4/15ths interest;

"Enos Peter, an undivided 4/15ths interest;

"Raymond Peter, an undivided 5/15ths interest;

"It is further ordered, adjudged and decreed by the court that Raymond Peter be and he is hereby decreed to be the owner of an undivided one-fifth (1/5th) interest in and to the following described land, to wit:

"The northwest quarter, and the west half of the southwest quarter of the northeast quarter of section 22, township 7 south, range 5 east of I. M., Marshall county, Okla.

"It is further ordered, adjudged and decreed by the court that the plaintiffs have judgment against the defendants quieting their title in said property as against all claims or demands of said defendants, or either of them, and those claiming by, through or under them, and that said defendants and each of them, and those claiming by, through or under them, be, and they are hereby forever barred and foreclosed from setting up or asserting any right, title or interest or estate in said property adverse to the title of said plaintiffs, and that said plaintiffs have and recover their costs; the question of an accounting as to rentals is passed for further hearing.

"To which action of the court the defendants duly and regularly except."

It will be observed from the foregoing judgment that the basis of the court's decision was its determination as a question of fact that Raymond Peter was an heir of Stephen Peter, deceased, and as such owned a part of the real estate involved

in the action. The court also found that Raymond Peter was born since March 4, 1906, and that by reason thereof the attempted conveyance of the homestead allotment was void because the same remained inalienable for the use and benefit of Raymond Peter in accordance with the Act of Congress of May 27, 1908. It was also concluded by the court that the conveyance as to the surplus allotment of the deceased ancestor was invalid and ineffective as to the one-fifth interest of Raymond Peter.

In presenting the case to this court on appeal the defendants do not dispute that there was sufficient evidence in the record to support the view adopted by the trial court that Raymond Peter was the heir of Stephen Peter. Neither do they disagree with the legal effect of that finding and the conclusions of law announced by the court by reason thereof. Their complaint is based upon the action of the trial court in deciding the question of fact at all. They say in their brief:

"The only question we desire to present in this case is that the district court had no jurisdiction to determine the heirs of Stephen Peter, deceased, in this purely collateral proceeding, but that the sole and exclusive jurisdiction to determine the heirship of Stephen Peter was vested in the county court of Marshall county."

In support of their contention it is urged by the defendants that the heirship of Stephens Peter, deceased, had been previously determined by the county court of Marshall county and that the determination of that court was conclusive upon the trial court in the case at bar. It is asserted that in the determination of the heirship made by the county court of Marshall county, Raymond Peter was determined not to have been an heir of Stephen Peter.

Stephen Peter was a full-blood Indian. All of the plaintiffs in this action are of Indian blood, except Lela Peoples, formerly Peter, who was the second wife of the deceased. Thus the Act of Congress of June 14, 1918 (40 St. at L. 606), known as the "Federal Heirship Act," is applicable to this litigation. That act provides in part as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that a determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs, by the probate court of the state of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by law of said state for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question; Provided, that an appeal may be taken in the manner and to the court provided by law, in cases of appeal in probate matters generally. * * *"

The effect of the act is to authorize the county courts of this state to make a determination of heirship in connection with the administration of the estate of deceased Indian allottees, which is conclusive not only as to the property which was assets in the hands of the administrator, but as to the property of the deceased allottee which did not pass into the hands of the administrator as assets of the estate. Hardridge v. Hardridge, 168 Okla. 7, 31 P. (2d) 597.

The defendants urge that the county court of Marshall county had made such a determination prior to the institution of this action and prior to the entry of judgment herein by the trial court and that the determination conclusively established that Raymond Peter was not an heir. Let us now direct our attention to the proceedings upon which the defendants rely.

Administration proceedings of the estate of Stephen Peter were commenced in the county court of Marshall county in 1918. In March, 1924, a final account was filed. A notice was given that the final account would be settled and petition for distribution and discharge would be heard on the 3rd day of July, 1924. No action was taken by the county court on the date indicated, but five years later, on the 5th day of July, 1929, the county court of Marshall county attempted to enter what was denominated a nunc pro tunc order, in which it recited, in substance, that the matter of hearing and determination of settlement on final account and distribution of the estate and determination of heirship incident thereto had been conducted and adjudicated on July 3, 1924, but no record made thereof. The court then proceeded in the purported nunc pro tunc order to recite a determination of heirship as of July 3, 1924. It is this purported nunc pro tunc order upon which the defendants rely as conclusively determining that Raymond Peter was not an heir of Stephen Peter.

Referring back to the excerpt from the Act of Congress of June 14, 1918, it will be noted that the determination of heirship as made by the county court was subject to

the right of appeal therefrom in the manner provided by law. Such an appeal was taken in this cause in connection with the order nunc pro tunc. The cause was tried in the district court on appeal, and that court determined that there had in fact been no real distribution of the estate and adjudication of heirship of Stephen Peter on July 3, 1924, and that the county court was without authority of law to enter the purported order nunc pro tunc. The case was brought to this court on appeal and appears in the reported decisions of this court as In re Peter's Estate, 175 Okla. 90, 51 P. (2d) 272. This court affirmed the action of the district court in declaring the order nunc pro tunc to have been ineffective. In disposing of that case we said in the body of the opinion:

"The district judge, sitting at a trial de novo, heard the testimony, and he held that the county judge did not do that very thing. He, in effect, held that there was no hearing had on the 3rd day of July, 1924; that the final account of C. C. Chestnut was not approved at the time and place it was set for hearing, and that no decree of heirship and distribution was ordered made, and the only question for us to pass upon is whether or not the district judge erred in that ruling. In other words, the district judge had the witnesses before him; he had an opportunity to observe their demeanor on the stand; he had an opportunity to question them as to their knowledge and lack of knowledge; the information and source of information about which they testified; and after hearing all the evidence he was convinced, evidenced by his journal entry, that on the 3rd day of July, 1924, no hearing had ever taken place. Therefore, the nunc pro tunc order entered by the county judge on the 5th day of July, 1929, was erroneously entered because a nunc pro tunc order can never be properly entered where there was no hearing nor determination of any kind at the time and the place specified."

And later, in announcing the disposition of the case, we said:

"In our opinion, none of these have any place in this record. The sole and only question before the district court was whether or not this nunc pro tunc order was properly entered, and since the court found that it was not properly entered and that the final report of C. C. Chestnut had never been approved, that distribution had never been ordered, then the proper thing for the district court to have done, and which the court is doing now, is to affirm the district court wherein it reversed the county court of Marshall county in entering its nunc pro tunc order of July 5, 1929, to be effective as of July 3, 1924, and to or-

der the county court of Marshall county, Okla., to proceed with the administration of that estate in a manner consistent with this opinion."

While the order nunc pro tunc had been made prior to the commencement of this action, it was, at the time this action was tried on appeal, lodged on appeal in the same court in which this action was pending. In fact, the two cases were consolidated, or partially consolidated, in the trial court for the purpose of trial, and both cases were taken under advisement at the same time, and the judgment of the district court declaring the purported order nunc pro tunc invalid was entered immediately prior to or at the same time of the judgment in this case.

It will thus be seen that, while the county court of Marshall county had the authority and power to make a complete adjudication of heirship of Stephen Peter, deceased, such adjudication was subject to the right of appeal by parties adversely affected thereby. Such an appeal was taken from the purported nunc pro tunc order and the order was vacated in the appellate court. The effect of the vacation of the order was to nullify the previously attempted adjudication of heirship. It, therefore, follows there never had been a valid determination of the heirship in the county court of Marshall county prior to the determination of heirship in connection with the trial of this case. The district court had the power to determine heirship as an incident to a determination of the rights of the parties in the action to quiet title, unless it was precluded from so doing by virtue of the fact that there was an administration proceeding pending in the county court of Marshall county which would prevent it from exercising its jurisdiction in this respect.

It is urged by the defendants in this connection that the power to determine heirship vested in the county court by the Act of June 14, 1918, was and is exclusive, and that the district court could not exercise such power in an action to quiet title when an administration proceeding was pending in the county court. The Act of 1918 also provides that:

"Where the time limited by the laws of said state for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exists no lawful ground for the institution of administration proceedings in said courts, a petition may be filed therein having for its object a determination of such heirship

and the case shall proceed in all respects as if administration proceedings upon other proper grounds had been regularly begun, but this proviso shall not be construed to reopen the question of the determination of an heirship already ascertained by competent legal authority under existing laws."

In the case of State ex rel. Miller v. Huser, 76 Okla. 130, 184 P. 113, this court had before it a situation in which a proceeding had been instituted in the county court to determine heirship of a deceased full-blood Indian under the last-quoted provision. At the same time there was pending in the district court of Creek county an action to determine the heirship of the same allottee. An application was made to this court for writ of prohibition to prevent the county court from proceeding to determine the heirs of the allottee. In discussing whether the Act of June 14, 1918, provided an exclusive method of determining heirship, this court in paragraph 7 of the syllabus said:

"The act, however, does not deprive the district courts of this state of jurisdiction of suits involving lands allotted to an Indian of the Five Civilized Tribes who may die or may have heretofore died leaving restricted heirs, where such suit necessarily includes the determination of the title, and, incidentally, the question of fact as to who are the heirs of said deceased allottee."

And at a later point in the body of the opinion we said:

"But we do not think said courts (district courts) are ousted as to jurisdiction of pending cases or prohibited from exercising jurisdiction over cases hereinafter instituted where the title of land is involved and it is necessary to prove, as an incident thereto, who, in fact, are the restricted Indian heirs of the deceased allottee."

In the case of Roberts v. Anderson, 66 Fed. (2d) 874, it was said in discussing a similar question:

"It must be conceded too, under the Black Panther and Wilcox Cases, that the lower court might proceed if no trial had been held in the county court; the fact that one might be held later could not deter the lower court. The question then is a simple one: The trial court, exercising unquestioned jurisdiction of a suit to quiet title, was confronted with the fact of heirship. Its duty was to decide it. A determination of the county court was presented as conclusive. The lower court found, upon ample evidence, that the determination was of no effect, because due process was denied. It could not recognize it as conclusive under the Constitution. What should the trial court do? It must either continue the cause until, in good time or never, the state courts acted; or it must proceed to adjudicate the issues presented to it by the suit to quiet title. We are of the opinion that the trial court followed the proper course; no valid determination of heirship being in existence when the cause was tried, it was its duty to decide the issues properly before it."

See, also, McDougal v. Black Panther Oil & Gas Co., 273 Fed. 113. In Re Lewis' Estate, 100 Okla. 283, 229 P. 483, we said in paragraph 1 of the syllabus:

"The Act of Congress of 1918, * * * specifically authorizing the determination of heirship of deceased Indians and conferring jurisdiction upon the county courts to determine same, authorizes the filing of a petition for such purpose, and the adjudication of same in all cases where the question of heirship has not been formerly adjudicated by a court of competent jurisdiction, and the fact that the estate has been administered upon, or administration proceedings are then pending, does not deprive the court of jurisdiction to hear and determine the question, unless there has been a former adjudication thereof."

In analyzing the case of Roberts v. Anderson, supra, it is to be noticed that the federal court therein stated that a valid determination of heirship by the county court should be treated as conclusive, even though an appeal has been taken therefrom **so long as such adjudication remains in force and undisturbed upon appeal.** The rule thus stated therein, however, is not beneficial to the defendants in this case, for the reason that prior to, or at least concurrently with, the determination of heirship in the case at bar, the previous asserted determination of heirship by the county court of Marshall county was destroyed by the judgment of the district court in the case then pending therein on appeal.

In considering the force and effect of the decision of this court in the case of State ex rel. Miller v. Huser, supra, it is to be noted that in the concluding paragraph of the body of that opinion it is suggested that where an administration proceeding is pending in the county court and a case is called for trial involving the question of heirship in the district court, the parties desiring to make proof of heirship may present a motion for continuance requesting the district court to await the determination of heirship in the county court. We therein suggested that such a continuance should be granted for a reasonable time. The effect of our statement in that respect was to say that, as a matter of

comity between courts, the district court in such case should allow the county court a reasonable time in which to make an adjudication of heirship. We did not say or hold that the district court was deprived of jurisdiction to determine the matter. On the contrary, we held that it had concurrent jurisdiction with the county court in that respect in so far as it was necessary for it (the district court) to decide the rights of the parties in the action pending therein. The suggested procedure does not affect the result of this case for the reason that the defendants herein do not complain of any action of the trial court in the case at bar in overruling a motion for continuance of the nature suggested. It is also to be observed in connection with this phase of the case that the federal court in the case of Roberts v. Anderson, supra, made the following observation:

"From these authorities it is clear that while the county court has jurisdiction to determine the fact of heirship of deceased citizen allottees of the Five Civilized Tribes, such jurisdiction is not exclusive but concurrent; and that where such fact of heirship is necessary for the determination of actions pending in another court, such court may determine such fact, and need not stay its hand until the county court has acted. The first valid adjudication of the fact by either court is conclusive upon the other within the principles of estoppel by judgment."

Under the foregoing authorities we conclude that, since there had been no valid determination of heirship in the county court of Marshall county which remained undisturbed and in force at the time the judgment in this case was rendered in the district court of that county, it was within the power and authority of the district court to make a determination of heirship of Stephen Peter as an incident to determining the rights of the parties in this action. In so holding we but apply the established principle that the authority vested in county courts of Oklahoma by the Act of June 14, 1918, is not exclusive, but cumulative.

Our attention has been directed to the cases of State ex rel. Morrell v. Worten, 161 Okla. 130, 17 P. (2d) 424, and Simms v. Hendricks, 172 Okla. 532, 45 P. (2d) 746. It is asserted that under these decisions the fact that an administration proceeding is pending in the county court of the state precludes the district court from exercising jurisdiction in suits such as this involving a controversy over lands of the deceased. The cited cases do not justify this broad assertion. The case of Simms v.

Hendricks, supra, denies the power of the district court to partition realty of a decedent over which the county court has jurisdiction in connection with the settlement of an estate. The case of State ex rel. Worten, supra, involves the same problem with the additional element that the property belonged to a deceased Osage Indian. In both of the cited cases the county court had acquired jurisdiction over the subject-matter, that is, the property sought to be partitioned by the district court. In the case of State ex rel. v. Worten, that jurisdiction was vested by the Act of Congress of April 18, 1912, which was therein quoted and which provided:

"That the property of deceased and of orphan minors, insane or other incompetent allottees of the Osage Tribe, such incompetency being determined by the laws of the state of Oklahoma, which are hereby extended for such purpose to the allottees of said tribe, shall, in probate matters, be subject to the jurisdiction of the county courts of the state of Oklahoma. * * *"

In the case of Simms v. Hendricks, supra, the property involved was treated as being within the jurisdiction of the county court as such. Although the land was originally allotted Indian land, no question as to the restricted character thereof was therein discussed and the land was treated as having fallen within the jurisdiction of the county court which had power to administer upon the estate of the deceased. The facts concerning the quantum of Indian blood and age of the interested parties in that case are not sufficiently disclosed on the face of the opinion to determine the restricted or nonrestricted character of the land involved. However, it may fairly be assumed that the land was unrestricted.

Aside from the character of the action, which, in each of those cases, was partition, as distinguished from a suit to cancel instruments and quiet title, which is the nature of the action presented in the case at bar, there is a very fundamental distinction between those cases and the case we are now considering. That distinction lies in the nature of the power being exercised by the county court with reference to the property involved. In this case we are dealing with restricted Indian lands, which do not constitute assets in the hands of the administrator and are not subject to the jurisdiction of the county court as a judicial body. See Wolfe v. Gills, 96 Okla. 6, 219 P. 350; Cowokochee v. Chapman, 90

Okla. 121, 215 P. 759; Bilby v. Noble, 106 Okla. 302, 234 P. 198.

Prior to the Act of Congress of June 14, 1918, supra, the county court not only did not have jurisdiction over such lands, but its decree determining heirship in connection with other property was not effective as a determination of heirs entitled to inherit such restricted land. The Act of June 14, 1918, did not extend the probate jurisdiction of the county courts of this state to include such land. It merely constituted the county courts of this state an administrative agency for the purpose of making a determination of heirship which would be conclusive upon the claims of parties asserting interests in such restricted land. See State ex rel. Miller v. Huser, supra. If such determination of heirship was made as an incident to final distribution of an estate, the determination thus made was, by virtue of the act of Congress, given the additional effect of settling the rights of those who claimed to be heirs in and to restricted lands which were not subject to administration. See Hardridge v. Hardridge, supra.

Thus the probate jurisdiction of the county courts of this state was not by the Act of Congress extended to include restricted Indian lands which were not assets in the hands of an administrator and which passed in whole or in part into the hands of restricted heirs. Washington v. Stoner, 169 Okla. 143, 36 P. (2d) 469. The county courts were given an additional administrative authority and their determination of heirship in connection with distribution was given additional evidentiary effect, but the inherited lands of restricted heirs derived by inheritance from an allottee in whose hands they were restricted were still outside their jurisdiction as county courts. Thus, under the authorities previously reviewed in this opinion, it has been universally held that the jurisdiction of other courts to determine heirship as an incident to the determination of the rights of litigants in actions therein pending was not disturbed by the Act on June 14, 1918. Similarly, since the county courts do not exercise jurisdiction in rem over such restricted lands, the commencement and prosecution of an action to quiet title in the district court with relation to such lands does not create a conflict of jurisdiction between a district court in which such action is pending and the county court in which an administration proceeding is pending.

We have discussed what is probably an obvious distinction in the interest of preventing future confusion. The judgment of the trial court is affirmed.

OSBORN, V. C. J., and BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., dissents. WELCH and RILEY, JJ., absent.