**UNITED STATES v. ANGLIN &
STEVENSON et al.**

No. 2881.

Circuit Court of Appeals, Tenth Circuit.

Oct. 6, 1944.

Norman MacDonald, Attorney, Department of Justice of Washingston, D. C. (Norman M. Littell, Asst. Atty. Gen., Cleon A. Summers, U. S. Atty., and William H. Landram, Asst. U. S. Atty., both of Muskogee, Okl., on the brief), for appellant.

Joseph C. Stone, of Muskogee, Okl., and D. A. Richardson, of Oklahoma City, Okl. (W. T. Anglin, of Holdenville, Okl., Alfred Stevenson and Dick Jones, both of Oklahoma City, Okl., E. W. Smith, of Henryetta, Okl., Charles A. Moon, of Oklahoma City, Okl., Francis Stewart, of Muskogee, Okl., Leon C. Phillips, of Okemah, Okl., L. O. Lytle and George Jennings, both of Sapulpa, Okl., Herbert G. House, of Muskogee, Okl., Roscoe S. Cate, of Oklahoma City, Okl., Harry B. Parris, of Eufaula, Okl., Wilbur J. Holleman and J. Garfield Buell, both of Tulsa, Okl., and Howell Parks, of Muskogee, Okl., on the brief), for appellees.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

By this appeal the United States challenges the power and authority of the trial court to award attorneys' fees and expenses to attorneys for certain Indian wards of the United States, who were the successful claimants in this proceedings to determine heirship and settle the Estate of

Jackson Barnett, a full-blood restricted Creek Indian. The fees and expenses awarded were ordered paid proportionately out of the distributive share of each of the successful Indian heirs in accordance with the court's judgment. The funds recovered by the litigation, as the distributive shares of the respective Indian clients, were restricted as and when inherited, hence not subject to disbursement without the consent and approval of the Secretary of the Interior. On this premise, it is contended by the United States that the judgment of the court ordering the payment of attorney's fees out of the inherited funds is in effect a disposal of restricted funds without the consent and approval of the Secretary of the Interior, who has not and cannot be sued, and is not a party to the suit; that the court did not acquire jurisdiction of the funds, consequently that part of its judgment allowing a fee and ordering it paid out of the restricted funds was unauthorized.

The judgment of the trial court is based upon the proposition that by appropriate pleadings filed by the United States, and every pretending heir, the court acquired jurisdiction to determine the lawful heirs of Jackson Barnett; to settle and distribute the Estate, and to try and decide every other issue essential to the full and complete determination of those questions; that when the United States, acting through the Secretary of the Interior and the Department of Justice, thus invoked the jurisdiction of the court, it thereby consented to the court's jurisdiction over the Estate, which was the subject matter of the litigation, for the purpose not only of determining heirship and distributing the Estate, but also to allow a reasonable attorneys' fee and expenses to the attorneys who recovered the funds for those found to be lawfully entitled to inherit the Estate.

The allowance of the fees to be paid out of the inherited funds recovered as the distributive shares of the Indian clients, is based upon the rule that where an attorney recovers a fund for the benefit of his client and others, those benefited thereby become obligated to pay the cost of the recovery and preservation of the fund, including a reasonable "between solicitor and client fee." The rule springs directly from the "authority of the chancellor to do equity in a particular situation," Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 780, 83 L.Ed. 1184, and has been applied under variant circumstances wherever right and justice require it. Sprague v. Ticonic Nat. Bank, supra; United States v. Equitable Trust Co., 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379; City of Wewoka v. Banker, 10 Cir., 117 F.2d 839; O'Hara v. Oakland County, 6 Cir., 136 F.2d 152; Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Wallace v. Fiske, 8 Cir., 80 F.2d 897; In re Middle West Utilities Co., D.C., 17 F.Supp. 359; Clarke v. Hot Springs Electric Light & Power Co., 10 Cir., 76 F.2d 918; Security National Bank of Watertown v. Young, 8 Cir., 55 F.2d 616, 84 A.L.R. 100; Nolte v. Hudson Navigation Co., 2 Cir., 47 F.2d 166; Central Railroad & Banking Co. of Georgia v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915. In United States v. Equitable Trust Co., supra, the rule was recognized and applied in a suit involving this Estate, and the appellees rely upon it to support not only the application of the equitable rule, but to sustain the jurisdiction of the court over the fund from which the costs are to be paid. Our question here is primarily one of authority to apply the rule, and not its application.

Jackson Barnett, a full-blood Creek Indian resident of Muskogee, Oklahoma, died intestate in Los Angeles, California, on May 29, 1934. He was survived by no wife or issue, no father, mother, brother or sister, and at the time of his death he was seized of an estate consisting of real property located in Oklahoma and California, and personal property in the form of bonds, securities and monies in the custody of the Secretary of Interior, having an admitted net value of $1,235,724.72, all of which represented the proceeds of oil and gas produced on his restricted allotment, and was likewise restricted against alienation and disbursement without the consent and approval of the Secretary of the Interior. Soon after his death, administration proceedings were commenced in the County Court of Muskogee County, Oklahoma, and two other suits were commenced, one in Muskogee County, Oklahoma, and another in McIntosh County, Oklahoma, to quiet title to certain lands located in the respective counties belonging to the Estate of Jackson Barnett. All of the suits had for their ultimate purpose the determination of the heirs of Jackson Barnett and the settlement and distribution of his Estate. Notice of the pendency of each of the suits was given to the Super-

intendent of the Five Civilized Tribes, as provided by Section 3 of the Act of April 12, 1926, 44 Stat. 239, and each of the said suits was duly removed to the United States District Court for the Eastern District of Oklahoma.

Thereafter the United States, by and through the Attorney General, acting at the request of the Secretary of the Interior, filed a petition of intervention in each of the removed cases as "guardian of the restricted Indian heirs of Jackson Barnett" (then undetermined). In each of the petitions it was alleged in substance that Jackson Barnett died seized of certain restricted real and personal property; that certain named restricted Indian wards of the United States were claiming an interest in the Estate as the lawful heirs of Jackson Barnett, and that other unnamed and unknown persons also claimed to be heirs of Jackson Barnett and as such to have some right and interest in his Estate. That all of the heirs of Jackson Barnett were restricted Indians, and that the intervention was filed as a guardian of the restricted wards who may be adjudged the heirs at law of the Estate of Jackson Barnett. The petition prayed that the court require the various claimants to appear and establish their rights by strict proof, and that the court determine the true and lawful heirs of Jackson Barnett, and distribute the Estate to his rightful heirs as their interest may appear, determine all the matters involved in this litigation, and for all proper and equitable relief to which those wards may be entitled.

Thereafter and on March 5, 1935, on motion of the parties, the cases were consolidated for trial and disposition as No. 4556 Equity "In the matter of the Estate of Jackson Barnett," and that part of the proceedings pertaining to the appointment of an administrator was remanded to the County Court of Muskogee County, where an administrator had been appointed, the trial court· retaining jurisdiction to determine heirship and to settle and distribute the Estate. Appropriate notice of the pendency of the suit was given to all known and unknown heirs, and they were by the court ordered to appear and present their claims to the Estate for adjudication on or before a specified date, or be forever barred from asserting any interest therein.

In pursuance of this notice, about fifty different family groups of pretending heirs, comprising approximately eight hundred individuals represented by attorneys, intervened in the consolidated suit, all claiming to be heirs of Jackson Barnett and entitled to inherit all or part of his Estate. Thereafter by amended petition of intervention, the United States pleaded a judgment in its favor and against Anna Laura Barnett in the United States District Court for the Southern District of California (see Barnett et al. v. United States, 9 Cir., 82 F.2d 765) as res judicata of her claim to the Estate, and prayed that she be barred from recovering any part of the Estate as such. In other respects the prayer was that the court determine the true and lawful heirs of Jackson Barnett, and to distribute the Estate as their respective interests may appear; that the claimants who are restricted Indians have the protection to which they were entitled, and that the United States be protected by final decree in its rights and duties with respect to the restricted Indians and their restricted property. Neither the original nor the amended intervention purported to allege who of those claiming were the lawful heirs of Jackson Barnett; the court treated the petition as an interplea, and the conduct of the United States throughout the course of the litigation was consistent with its assumed position of neutrality.

In September, 1937, and in the course of the trial of the case, the attorneys representing three separate family groups became convinced that all of the members of these three family groups were true and lawful heirs of Jackson Barnett, but were uncertain concerning which of these three groups was the next of kin and entitled to inherit the Estate. As a consequence, these three groups entered into a so-called family settlement, in which it was agreed that regardless of which of these groups was adjudged to be entitled to inherit the Estate, that which was inherited would be divided between the three groups in accordance with the agreement. This family settlement was approved by the County Court of Muskogee and McIntosh Counties, and the Secretary of the Interior also approved it without prejudice to the rights of any claimant to assert a claim and have it adjudicated by the court. Thereafter in the trial of the case these three family groups presented a united front against all other claimants to the Estate, and undertook the responsibility of disputing each and every claim inconsistent with their claims as next of kin.

After a trial extending over a period of approximately five years, the court rendered judgment, finding and determining in substance that the members of these three family groups included in the. so-called family settlement, were the lawful heirs of Jackson Barnett and entitled to inherit the Estate. It was ordered that the Secretary of the Interior retain the funds as the respective shares of the restricted heirs for their use and benefit "excepting such sum or sums as this court may allow, fix and determine as charges thereon and payable therefrom as costs, expenses, and attorney's fees in connection with this suit." It enjoined all other claimants from asserting any right, title or interest in and to the Estate, and reserved jurisdiction of the case for the purpose of hearing and determining any and all matters properly incident or ancillary to the enforcement of its decree. The case was duly appealed to the Circuit Court of Appeals by three or four hundred unsuccessful claimants, and presented to this court upon an abbreviated record consisting of 12,000 pages. The United States adopted the requested findings of fact and conclusions of law submitted by the successful family groups, but on appeal filed a memorandum stating that throughout the trial the United States continued to occupy an impartial position as between the claimants; that its representatives were present and participated in the trial solely to render to the court such assistance as might be required in order to reach a fair and just decision on the issues involved, and that it desired to continue that impartial position upon appeal. It did not argue or otherwise take part in the prosecution of the appeal. The judgment of the trial court was successfully defended by the appellees here as counsel for the three family groups and was affirmed by this court in Scott v. Beams, 122 F.2d 777. Much of the pertinent details are narrated there and will not be repeated here. The unsuccessful parties petitioned for writ of certiorari which was denied (315 U.S. 809, 62 S.Ct. 795, 86 L.Ed. 1209), and the case was again here in Brady v. Beams, 132 F.2d 985; appellees prevailed and certiorari was denied, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208.

In pursuance of the express reservation in the court's judgment and decree, which became final after all appeals were exhausted, the attorneys who had represented the successful claimants, having first obtained leave of the court, filed a petition for allowance and order for the payment of a reasonable attorney's fee and expenses, to be paid out of the funds recovered by the litigation. The petition pleaded the employment contracts with the Indian clients and the approval of the contracts by the proper county courts having jurisdiction of the incompetent Indians. It detailed the course of litigation and the results obtained, and prayed that they be allowed 33⅓% of the amount recovered for their clients as attorneys' fees in accordance with the employment contracts, and the actual expenses incurred in the prosecution of the suit, all to be paid out of the funds thus recovered.

Appropriate notice was given to all interested parties and the United States, appearing in behalf of its Indian wards, moved to dismiss the petition for the allowance and order for the payment of attorneys' fees and expenses on the grounds that the Estate of Jackson Barnett, before and after inheritance, was under the exclusive control and jurisdiction of the Secretary of the Interior, and that the court did not acquire jurisdiction of the Estate or of the Secretary of the Interior, and did not have power to determine the beneficial ownership, distribute the same or allow costs and expenses, including attorneys' fees to be paid therefrom.

The same defenses were pleaded by way of answer and response, and the case came on regularly for trial. Much testimony was adduced by appellees to portray the course of litigation, including the issues as cast by the pleadings, and the 'amount of tedious efforts and professional acumen expended in behalf of the successful claimants, all tending to show the actual value of the professional services rendered in the prosecution of their clients' cause.

The trial court sustained its jurisdiction to "allow, fix and determine" the expense and attorneys' fees and to order the same paid out of the funds recovered. It also reviewed in detail the time, efforts, talents and hazards involved in the prosecution of the suit, and based upon its intimate knowledge of the whole litigation, the court determined that 25% of the amount recovered was a reasonable attorney's fee, and the same was allowed and ordered paid proportionately out of the distributive share of each successful heir. The actual expenses in the total sum of $33,561.63, incurred by appellees in the prosecution of the suit,

was also allowed, and the parties who advanced the same were ordered reimbursed out of the inherited funds of the respective groups in whose behalf it had been expended.

On appeal, it is contended that since by Section 1 of the Act of 1918, 40 Stat. 606, 25 U.S.C.A. § 375, the probate courts of Oklahoma are specifically authorized to conclusively determine the factum of heirship of any deceased citizen allottee of the Five Civilized Tribes who leave restricted heirs, and this suit, having been originally filed in the probate court of Muskogee County for that purpose, and removed to the Federal Court by virtue of the removal clause in the Act of April 12, 1926, the Federal Court derived no greater jurisdiction than that which was conferred upon the Oklahoma court by Section 1 of the 1918 Act, supra; that the probate court certainly did not have any equity jurisdiction to allow attorneys' fees and expenses, and order same paid out of restricted funds in the exclusive control and custody of the Secretary of the Interior, consequently no such power resided in the Federal courts upon removal.

 Ordinarily, the jurisdiction of the Federal court on removal under the general removal Act, Section 28 of the Judicial Code, as amended, 28 U.S.C.A. § 71, is measured by the jurisdiction of the court from which the case was removed. Booth v. Merchants National Bank, 5 Cir., 100 F.2d 478. But the jurisdiction to determine heirship of a deceased Indian citizen conferred upon the County Court of Muskogee County by Section 1 of the Act of 1918, is not exclusive. State and Federal district courts are also authorized to determine heirship of a restricted Indian citizen of the Five Civilized Tribes concurrently with the probate court as a necessary incident to the exercise of their original and general jurisdiction. State v. Huser, 76 Okl. 130, 184 P. 113, 122; State v. Wilcox, 75 Okl. 158, 182 P. 673; March v. Peter, 179 Okl. 207, 64 P.2d 912; McDougal v. Black Panther Oil & Gas, 8 Cir., 273 F. 113; Roberts v. Anderson, 10 Cir., 66 F.2d 874; Anderson v. Peck, D.C., 53 F.2d 257; Homer v. Lester, 95 Okl. 284, 219 P. 392.

 The two suits commenced in the district courts of Muskogee and McIntosh Counties were in equity to quiet title to real estate located in the respective counties which belonged to the Estate, and in each case the general equity powers of the court were invoked for the purpose of granting equitable relief. These cases were removed to the Federal Court, consolidated with the heirship proceedings in the County Court, and the case was thereafter treated by all parties as an equitable proceedings in which the full equity powers of the court were set in motion. Indeed, the affirmative pleadings filed by the Attorney General for the Secretary of the Interior do not indicate any limitations upon the equitable jurisdiction of the trial court. In any event, it is clear that the trial court possessed all of the equity jurisdiction which existed in the state district courts, from which the cases were removed.

Furthermore, these cases were not removed to the Federal Court under the general removal statute. As we have seen, they were removed under Section 3 of the Act of April 12, 1926, which relates exclusively to suits commenced in state or Federal courts involving or affecting the restricted lands of members of the Five Civilized Tribes, or the proceeds, rents or profits therefrom. It specifically authorizes any party to a suit of this class in a Federal or state court to serve notice of the pendency of such suit upon the Superintendent of the Five Civilized Tribes, after which notice as provided therein the United States is bound by any valid judgment of the court in which the suit is brought "to the same extent as though no Indian lands were involved," provided that the Superintendent may remove any such suit if commenced in the state court to the United States court as provided in the Act, whereupon the cause proceeds "in the same manner as if it had been originally commenced in said district court, and such court is hereby given jurisdiction to hear and determine said suit." 44 Stat. 239.

 The text of the Act and the setting in which it was enacted, indicates a deliberate and studied intent and purpose to depart from the general rule of jurisdiction on removal and to specially delimit the jurisdiction of the United States courts in this particular class of cases. It indicates a Congressional intent to free the United States courts of the limited jurisdiction sometimes existing when a case is removed under the general statute, and to vest in the court all of the jurisdiction it would have acquired if the action had been originally filed in the United States courts. United States v. House, 10 Cir., 144 F.2d 555; Town of Okemah v. United States, 10

Cir., 140 F.2d 963; United States v. Fixico, 10 Cir., 115 F.2d 389; Caesar v. Burgess, 10 Cir., 103 F.2d 503; Fish v. Kennamer, 10 Cir., 37 F.2d 243. It is also the manifest intent of the Act to relax the exclusive jurisdiction of the United States over the property of its Indian wards, and to that extent and in the manner therein provided, to bind the United States by any valid judgment of the court "as though no Indian land * * * were involved." Caesar v. Burgess, supra [103 F.2d 506]; United States v. House, supra; Fish v. Kennamer, supra.

■ It cannot be doubted that the United States, acting through the Attorney General at the request of the Secretary of the Interior, could have brought this suit originally in the trial court, and the court would have under these pleadings acquired equitable jurisdiction to grant the identical relief sought by the petition of intervention which the United States filed after removal under Section 3 of the 1926 Act. It is therefore plain to us that the jurisdiction of the trial court was not hampered or hindered by any restrictions or limitations which might have existed in either of the state courts from which this case was removed, and it becomes plain that the trial court acquired jurisdiction to hear and determine all the issues raised by the pleadings as a court of equity exercising traditional equitable jurisdiction.

■ We do not forget that historically and traditionally the Secretary of the Interior has been selected as the executive arm of the Government to execute the declared Congressional policy with the Indians. As such, he and his subordinates have the responsibility of discharging the obligation of the Government to its Indian wards, and in that respect, he is given wide discretionary powers to deal with the individual Indians who are dependent upon the Government for tutelage and protection. Board of Commissioners of Pawnee County v. United States, 10 Cir., 139 F.2d 248; Creek Nation v. United States, 318 U.S. 629, 63 S.Ct. 784, 87 L.Ed. 1046; Seminole Nation v. United States, 316 U.S. 286, 62 S.Ct.

1049, 86 L.Ed. 1480. See also Cohen's Handbook of Federal Indian Law, p. 100.[1] In the discharge of these duties, he acts as supervisor, agent, guardian, and trustee of the Indian and his property, whether in the nature of lands or restricted funds. While exercising the powers and duties imposed by law, he is clothed with sovereign immunity, and ordinarily is not amenable to judicial processes or bound by judicial decrees absent legislative consent. Morrison v. Work, 266 U.S. 481, 45 S.Ct. 149, 69 L.Ed. 394; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894. If however, by statutory consent, the United States submits to the jurisdiction of a court as a suitor, it is amenable to the processes of that court in the same manner as private citizens to the extent it has consented to be bound. Guaranty Trust Co. v. United States, 304 U.S. 126, 127, 58 S.Ct. 785, 82 L.Ed. 1224; Folk v. United States, 8 Cir., 233 F. 177, 191.

■ The Secretary of the Interior held these funds in his custody as guardian and trustee of the restricted heirs of Jackson Barnett, yet undetermined; he had exclusive jurisdiction over them in his sovereign capacity and they are not now within the reach of judicial process unless by authorized consent they were committed to the court for judicial administration, and then only to the extent and purpose for which they were tendered. State of Minnesota v. United States, 305 U.S. 382, 59 S. Ct. 292, 83 L.Ed. 235. Cf. United States v. Shaw, supra; United States v. United States Fidelity & Guaranty Co., supra; F. H. A. v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724; United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; Eastern Transportation Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472; Oswald Jaeger Baking Co. v. Commissioner, 7 Cir., 108 F.2d 375; Kuhnert v. United States, 8 Cir., 127 F.2d 824; United States v. Davidson, 5 Cir., 139 F. 2d 908. It is not the judicial function to administer the affairs of incompetent In-

[1] The following statutes demonstrate the history of the Secretary of the Interior's control and management of Indian affairs: Act of March 3, 1849, 9 Stat. 395; Act of July 27, 1868, 15 Stat. 228; Act of February 8, 1887, 24 Stat. 388, 25 U.S.C.A. §§ 331 et seq., 341, 342, 348, 349, 381; Act of January 27, 1933, 47 Stat. 777; Act of June 18, 1934, 48 Stat. 984, 25 U.S.C.A. § 461 et seq., supplemented by the Act of June 26, 1936, 49 Stat. 1967, 25 U.S.C.A. § 501 et seq., supplemented by the Act of August 9, 1937, 50 Stat. 564; Act of May 9, 1938, 52 Stat. 291.

dians, and courts should be at pains not to invade the trust or encroach upon the prerogative which has been traditionally assigned to the Secretary. But when, as here, the Secretary, acting within the scope of his powers as guardian of the Indian wards, invokes the equitable jurisdiction of the courts to perform a judicial function in connection with the Estate or fund, which does not lie within the province of the Secretary, he cannot stop the processes which he has thus set in motion short of a full and complete adjudication of all matters and things which have been properly committed to the court. There can be no doubt of the power of the Secretary to invoke the jurisdiction of the court to construe and declare his legal duties and responsibilities to the Indian wards, and to protect him in the discharge of those duties when legally ascertained, and the power of the court to grant the relief sought in a situation of this kind is not and cannot be doubted.

█ The Secretary is not directly a party to these proceedings, but notice of the pendency of the suit was filed upon his subordinate, the Superintendent of the Five Civilized Tribes, and the Attorney General removed the suit and filed the petition of intervention at the Secretary's request. It is plain therefore that if the United States is a party to the suit, and is bound by the judgment of the court, the Secretary is likewise bound. Since the stream can rise no higher than its source, the sovereign immunity of the Secretary cannot transcend the sovereignty itself.

In United States v. Equitable Trust Co., 283 U.S. 738, 51 S.Ct. 639, 642, 75 L.Ed. 1379, the Supreme Court held that the United States "by its intervention and participation" in a suit by Jackson Barnett's next of friend, to recover restricted funds of the Estate which had been improperly released, "consented, impliedly at least" that the court had jurisdiction to allow expenses and attorneys' fees to his attorneys and next of friend for services rendered in behalf of the Estate, and to order the same paid out of the funds recovered by the litigation. The court's decision was based upon the doctrine of United States v. The Thekla, 266 U.S. 328, 45 S. Ct. 112, 69 L.Ed. 313. See also The Siren, 7 Wall. 152, 19 L.Ed. 129; New York Dock Co. v. The Poznan, 274 U.S. 117, 121, 47 S.Ct. 482, 71 L.Ed. 955. Since consent of the Secretary to be bound by the judgment of the court in the Equitable Trust case was implied by the intervention and participation of the United States in the suit, it is argued that the case should be narrowly construed in harmony with the later pronouncements in United States v. Shaw, supra, and United States v. United States Fidelity & Guaranty Co., supra; United States v. Davidson, supra.

We are not insensible to the narrow and tenuous grounds upon which the decision in the Equitable Trust case rests when considered in the light of the traditional philosophy of sovereign immunity and we are not disposed to broaden the base or enlarge upon the doctrine of implied consent as therein enunciated. But we are convinced that these peculiar facts and circumstances fully justify its application. Moreover, the jurisdiction of the court here does not rest upon implied consent through intervention and participation alone. By statutory mandate, Sec. 3 of the 1926 Act, the United States has consented to be bound by the judgment of the court in respect to the vital issue of heirship and jurisdiction of the court over the subject-matter and the parties (including the Secretary) for this purpose is not challenged or denied. The doctrine of implied consent has application only to the jurisdiction of the court over the funds in the custody of the Secretary of Interior, which he holds as Trustee and guardian for the lawful heirs of the Estate, when adjudicated. After notice of the pendency of the suits seeking determination of heirship and settlement of the Estate was served upon the Superintendent of the Five Civilized Tribes in accordance with the 1926 Act, the Secretary elected not only to remove the case as therein authorized, but to affirmatively invoke the jurisdiction of the court in his behalf. He represented that he held restricted funds and properties of the Jackson Barnett Estate in his custody and control, and that the said funds belonged to the undetermined heirs of Jackson Barnett. He prayed that all persons claiming an interest in the Estate be required to appear in this proceedings and to assert their claims for adjudication or be forever barred. Thus, by the Secretary's affirmative pleadings, he cast upon the rightful heirs the onerous burden of litigating their rights to the Estate in the forum selected by the Secretary.

The rightful heirs, now determined to be the clients of these appellees, were un-

lettered and unlearned, and according to the Secretary, restricted and incompetent; they stood in need not only of legal counsel, but of counsel who believed in their cause sufficiently to advance money necessary for long and tedious litigation. Those lawyers have now successfully presented their clients' cause and have expended the funds necessary to accomplish it; the court has adjudicated the rights of the parties in accordance with the Secretary's prayer, and ordered the funds vested in the Secretary as guardian of the rightful heirs, reserving the right to charge the funds with the reasonable cost of litigation as a necessary incident to the full and complete adjudication of the issues committed to it. Without more, it is·plain that the court acquired jurisdiction of the fund and the power to bind the Secretary by its judgment over it.

The United States also challenges the reasonableness of the attorneys' fees allowed, contending that by the Government's participation in the suit, it greatly facilitated and expedited the determination of the rightful heirs; and assisted counsel for appellees and the court in reaching a just result, thereby minimizing and reducing the time, efforts, and expense of the appellees. It is true, as contended, that a representative of the United States was present and participated in every step of the proceedings—not only the Attorney General's office assisted in the taking of depositions, securing witnesses, and identifying heirs, but a representative of the Federal Bureau of Investigation was present during all or most of the proceedings for the purpose of combatting perjury and fraudulent claims. It is also true that the Secretary approved the so-called family settlement which enabled the three family groups to present a united front, and in other ways the Government threw its weight on the side of the rightful heirs. But at no time in the trial did it assume a role of an advocate in their favor, instead it maintained a position of strict neutrality throughout the proceedings. The position taken by the Government, and its contribution to the trial, did not avoid the necessity of employing counsel on a contingent basis and the expenditure of $33,561.63, which the Government does not deny was prudently spent in the prosecution of the suit. It is unnecessary to further detail the course of the litigation, suffice it to say that it was long and tedious, and consumed the time, talents and money of the appellees over a period of approximately five years. The outcome of the litigation was necessarily uncertain and the appellees assumed all of the hazards of it.

The allowance of 25% of the amount recovered is well within the proof adduced on this record in support of a reasonable attorney's fee, and it is well settled that in cases of this kind the allowance of attorneys' fees is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered. And an appellate court is not warranted in overturning the trial court's judgment unless under all of the facts and circumstances it is clearly wrong. City of Wewoka v. Banker, 10 Cir., 117 F.2d 839. That rule would seem to have cogent application in view of the rich and mature background of the learned trial judge. As a distinguished lawyer of the Indian Territory and of Indian law; first Chief Justice of the Supreme Court of the State of Oklahoma; Governor of the State; twenty years a judge of the United States District Court which comprises the Indian Territory; a Judge of the United States Circuit Court of Appeals for the Circuit in which Indian litigation is plentiful, and as one whose conservatism and frugality are so well known, we do not know of anyone better qualified by knowledge and experience to fix and determine the amount of attorneys' fees, particularly in cases of this kind. Certainly it does not lie within the competency of this court to disturb his judgment on this record.

The judgment is affirmed.